## LEONHART ET AL. *v.* ATKINSON

[No. 278, September Term, 1971.]

*Decided April 4, 1972.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Harry Adelberg* for appellants.

*L. Keith Simmer, Jr.,* with whom were *Benjamin C. Howard* and *Miles & Stockbridge* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This case is before us on appeal from a decision of the Superior Court of Baltimore City where Judge Sodaro granted a motion for summary judgment after concluding that this cause of action for professional malpractice was barred by the statute of limitations. Maryland Code (1957, 1972 Repl. Vol.), Art. 57, § 1. Consequently our primary task is to determine whether any factual issues exist. In doing so, we must resolve all inferences against the moving party as we examine the pleadings, admissions, and affidavits here. Maryland Rule 610; *Sherman v. Am. Bankers Life Assur.,* 264 Md. 239, 285 A. 2d 652 (1972). From these we observe that on April 1, 1971, Mr. and Mrs. William Leonhart, and their corporation, Leonhart & Company, Inc., instituted suit for professional malpractice against Granville Atkinson, appellee. Leonhart & Company, a re-insurance brokerage firm, was incorporated under the laws of Maryland in 1953. From the birth of the corporation until 1969 Atkinson, an independent certified public accountant, had the responsibility of auditing the corporation's books and records as well as preparing its annual federal and state tax returns. Until 1960, the federal tax liability was computed using the cash accounting method with the exception of one account, American Fire and Casualty Co., which was calculated on an accrual basis. However, in 1960 and 1961 appellee recommended that the corporation figure all its accounts utilizing the cash accounting method. This advice was followed, but unfortunately, it did not adhere to the regulations of the Internal Revenue Service which required obtaining prior consent before such a change could be made. Int. Rev.

Code of 1954, § 446 (e) (26 U.S.C.A., § 446 (e)); Int. Rev. Reg. § 1.446-1 (e) (2) (i) (1954).

On June 11, 1963, the taxpayers received notification from the I.R.S. advising them that their change in computation from the accrual to the cash method was unauthorized and in order to comply with the requirements of the law, additional tax must be paid. The notice stated:

> "The taxpayer did not file an application on Form 3115 with the Commissioner of Internal Revenue, Washington 25, D. C., within 90 days after the beginning of the taxable year in which it desired to make the change. This agent proposes that the taxpayers may not compute his taxable income under a method of accounting different from that previously used by him unless such consent is secured from the Commissioner of Internal Revenue."

It is unclear what activities took place in the next two years, but the appellants concede that on April 27, 1965,[1] they were advised by the I.R.S. that because of their improper accounting calculations a substantial tax deficiency had been assessed against them.[2] Appellants challenged this assessment in the United States Tax Court and after an adverse decision there on May 27, 1968, they prosecuted an equally unsuccessful appeal in the United States Court of Appeals. *Leonhart v. C.I.R.*, 414 F. 2d 749 (4th Cir., decided Aug. 25, 1969).

During the entire time this tax issue was being litigated, Atkinson remained as the appellants' accountant, continued to prepare their tax returns and repeatedly

---

1. The Tax Court in *William H. Leonhart*, 27 T.C.M. 443 (1968), stated that the notice of deficiency was sent on August 27, 1965. Regardless of which of these dates is accepted, the outcome of this case is not altered.

2. The accounting dispute was not the only controversy in issue. At least nine deductions which were claimed by the appellants, not relevant to this appeal, were also disallowed by the I.R.S. The agency assessed a deficiency of $24,611.16 plus $1,230.56 in penalties for 1960 and $19,884.64 plus $994.23 for 1961. Of this amount $14,929.08 in 1960 and $15,596.14 in 1961 was attributed to the change in the method of accounting.

gave assurances that the I.R.S. position was incorrect. When negotiations with the agency failed, it was appellee who advised that the tax court be petitioned for relief and he recommended legal counsel, other than the corporation's regular attorney, to handle the case. After all efforts to get the assessment overturned failed, the Leonharts and their corporation brought this suit against appellee to recover damages for the alleged professional malpractice of their accountant.[3] Atkinson, in addition to pleading the general issue, filed a special plea claiming the action was barred by limitations. He included a motion for summary judgment supported by affidavit which had attached to it the I.R.S. statement of proposed adjustments. In opposition to this special plea, appellants, by way of replication, stated that the appellee by his conduct waived the limitations statute and was estopped from relying on it. They also filed an answer supported by affidavit in opposition to the summary judgment motion. This affidavit does not dispute that the June 11, 1963 notice, disallowing the accounting change, and the April 27, 1965 deficiency assessment were both received. Instead, the Leonharts oppose the summary judgment motion by alleging that Atkinson continually reassured them that the I.R.S. position was incorrect since the accounting change that was made did not necessitate the agency's prior consent. They further allege that appellee's statements were deliberately misleading and made for the express purpose of lulling them into a false sense of security so as to delay the start of litigation against Atkinson until limitations had run. During oral argument in the trial court on the motion for summary judgment, the appellants' attorney conceded that there was no fraud or concealment in the accountant's actions. With this concession Judge Sodaro concluded that the case of *Feldman v. Granger,* 255 Md. 288, 257 A. 2d 421 (1969) was dispositive of all questions raised and granted

---

3. Apparently the only damages sought are for the deficiencies caused by the change in the accounting method, plus interest and penalties as well as the costs of contesting the assessment.

summary judgment. This appeal ensued but to no avail, as we agree with the decision of the trial judge.

Article 57, § 1 of the Code (1957, 1972 Repl. Vol.) provides in pertinent part that "All actions of account, actions of assumpsit, or on the case, . . . shall be commenced, sued or issued within three years from the time the cause of action accrued . . . ." In a case in which limitations is an issue it is necessary to ascertain the date from which the cause of action accrues. The general rule, undoubtedly, is that limitations against a right or cause of action begins to run from the date of the alleged wrong and not from the time that wrong is discovered. *Killen v. Geo. Wash. Cemetery*, 231 Md. 337, 190 A. 2d 247 (1963). But as Judge Finan speaking for the Court in *Mattingly v. Hopkins*, 254 Md. 88, 92-93, 253 A. 2d 904 (1969) said:

> "Like most general rules of law, those pertaining to 'limitations' become less than profound when an attempt is made to apply them to specific cases. Much has been written as to when 'limitations' should start to run. Some courts have held the cause of action accrues when the defendant commits his wrong, others when the plaintiff discovers the wrong, and still others have held that it does not accrue until the maturation of harm. Sometimes the happening of the wrong, the knowledge of it and the maturation of the harm are simultaneous. When this occurs the recognition of the accrual of the cause of action is simple, when these elements happen sequentially it can become complex. Furthermore, there are nuances of difference in the accrual of the cause of action in cases arising out of actions *ex contractu*, as distinguished from actions *ex delicto*, and a further hybridization of actions arising out of professional malpractice and otherwise."

The harshness of the general rule was readily observable

in malpractice suits as it frequently left a victim of professional malpractice without a remedy because the initial wrong was not always discoverable until after limitations had run, even though due diligence was exercised. This has led to the creation of exceptions, one of which Maryland has adopted—the "discovery rule." As long ago as 1917, in *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917), this Court established the concept that in medical malpractice cases the cause of action accrues when the wrong is discovered or when with due diligence it should have been discovered. In the more than fifty years since that decision, the "discovery rule" has been consistently extended so that now it is clearly applicable to all cases involving professional malpractice. *Steelworkers Holding v. Menefee,* 255 Md. 440, 258 A. 2d 177 (1969) (architect) ; *Feldman v. Granger, supra* (accountant) ; *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A. 2d 359 (1969) (attorney) ; *Mattingly v. Hopkins,* 254 Md. 88, 253 A. 2d 904 (1969) (civil engineer) ; *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A. 2d 825 (1966) (physician) ; see also Comment, *Limitations in Professional Malpractice Actions,* 28 Md. L. Rev. 47 (1968). However, acceptance of that rule is as far as this Court has been willing to go and we have rejected the "maturation of harm" doctrine. *Feldman v. Granger, supra* at 294; *Mattingly v. Hopkins, supra* at 96.

This leaves us then with the problem of determining the day that the appellants discovered or should have discovered they had a cause of action. If that date is within three years of the filing of this case, the appellants should have been allowed to proceed to trial; if not, the trial judge was correct in granting the motion for summary judgment. No one here maintains that limitations began to run when the accountant erroneously advised the Leonharts concerning their tax liability for the years 1960 and 1961. But Atkinson does contend that the period of limitations began as early as June 11, 1963, when the appellants first received notice, as part of a proposed tax adjustment, that their accounting change was dis-

allowed, and no later than April 27, 1965, the day the tax deficiency was assessed by the I.R.S. On the other hand, appellants argue that the limitations period did not commence until May 27, 1968, when the tax court affirmed the assessment and therefore the suit was filed almost two months before it would be barred by the statute. As we view this dispute in light of *Feldman v. Granger, supra,* which relied heavily upon a case on all fours with the one here, *Atkins v. Crosland,* 417 S.W.2d 150 (Tex. 1967), appellants' position is untenable. In *Feldman* the plaintiffs, who owned a small business corporation, alleged that their accountants acted negligently by failing to file a timely request with the I.R.S. in 1960 which would have permitted them to treat their company, for tax purposes, as a sub-chapter S corporation. This change was desired because it allowed income and losses to be computed for taxes by each of the shareholders individually, instead of by the corporation. The plaintiffs were informed by the I.R.S. that their request was denied but disregarding this, they personally claimed the company's losses. On January 6, 1964 the agency mailed a statement of tax liability, which the plaintiffs protested. The I.R.S. (appellate division) on July 22, 1964 assessed a deficiency which was appealed to the tax court; more than three years later that court affirmed the assessment. In *Atkins v. Crosland, supra,* the plaintiff brought suit against his accountant for failure to obtain the required permission from the I.R.S. before he could change accounting methods. Both of these cases adopted the date that the agency's notification of a tax deficiency assessment was received by the taxpayer as the time when a reasonable man, exercising ordinary diligence, would have discovered his cause of action. Our language in *Feldman v. Granger,* 255 Md. 288, is applicable here:

"the appellants are seeking to have an element considered, which would in many cases, and certainly in this case, go beyond either the discovery of the negligent act or the maturation of harm, namely, that the limitation period should

not start to run until the plaintiff has exhausted all available administrative remedies. *Id.* at 294.

. . .

[W]e are of the opinion that any reasonable and prudent man, being in the place of the appellants, would have known or certainly should have known [when they received notice of the tax deficiency], that he had sustained legal harm as of that date, if not before. . . .

It is true that in an income tax case, such as is involved in the present litigation, the exact amount of deficiency may be subject to negotiation at various conference levels so that the damage might be altered prior to the notice or assessment of deficiency, but as in the *Mattingly* case, and as in other tort cases, the exact amount of damages sustained may not be known at the time of the discovery of the wrong. However, in our opinion this is not a sufficiently sound reason to postpone the accrual of the action or toll the running of limitations when other reasons grounded in public policy are considered." *Id.* at 296.

Accordingly, as directed by *Feldman,* the date the notice of the tax deficiency assessment was received by the Leonharts, April 27, 1965, is the date limitations began to run adversely against appellants' cause of action. Therefore, since more than three years had elapsed from that day until this suit was instituted on April 1, 1971, appellants' action is barred unless the running of the statute was tolled.

Under appropriate circumstances, Art. 57, § 14 of the Code (1957, 1972 Repl. Vol.) tolls the statute of limitations when a party is kept in ignorance by his opponent's fraud that he has a cause of action.[4] But as

---

4. Section 14 is a statutory exception in Maryland which halts the running of the statute of limitations and provides that:
    "In all actions where a party has a cause of action of

noted by Judge Sodaro, appellants conceded that Atkinson practiced no fraud or concealment, so the beginning date of limitations is not postponed by § 14. Even without this concession appellants cannot succeed under that section since their replication does not affirmatively allege the following: (i) that they were kept in ignorance by the fraud of an adverse party that they had a cause of action; (ii) how, if fraud existed, they discovered it; (iii) why they did not discover it sooner; and (iv) what diligence they exercised to discover it. *Mettee v. Boone,* 251 Md. 332, 339, 247 A. 2d 390 (1968) ; *Piper v. Jenkins,* 207 Md. 308, 319, 113 A. 2d 919 (1955).

The Leonharts apparently sensed the futility of pursuing this attack on the limitations plea and instead choose to rely almost exclusively on the doctrines of waiver and estoppel. Appellants have not cited, nor have we been able to find a case with circumstances similar to those existent here, in which these equitable doctrines have been invoked. In equity the requirements necessary to avoid a bar by limitations on the ground of ignorance correspond to the test contemplated by Art. 57, § 14. *Piper v. Jenkins, supra* at 318. The appellants seemingly are attempting to raise a § 14 defense to a plea of limitations under the guise of equitable estoppel and waiver, by claiming reliance on Atkinson's repeated assurances that his advice was correct. In their brief the Leonharts argue that appellee ought to be prohibited from using the statute as a bar since his conduct "obscure[d] the [appellants'] perception of the wrong or prevent[ed] discovery" of it. Here, appellants have not alleged anything tantamount to constructive fraud, nor have they demonstrated that appellee has been guilty of "any unconscionable, inequitable or fraudulent act of commission or omission upon which [another] relied and has been

---

which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

misled to his injury." *Jordan v. Morgan, Adm'x*, 252 Md. 122, 132, 249 A. 2d 124 (1969). We do not think appellants have alleged facts from which waiver or estoppel could be found. All they have shown is that after appellee erroneously advised them, he continually maintained his position and recommended that the matter be pursued in the tax court. It was not alleged that the accountant at any time asked the Leonharts to forbear bringing suit against him. It was also not alleged that Atkinson indicated he would waive the defense of limitations should the appellants later make a claim, or that he induced them not to file suit by giving assurances that he would settle any claim they might make. *Jordan v. Morgan, Adm'x, supra; Cornett v. Sandbower, Adm'r*, 235 Md. 339, 201 A. 2d 678 (1964) ; *Chandlee v. Shockley*, 219 Md. 493, 150 A. 2d 438 (1959) ; *Wright v. Wagner*, 182 Md. 483, 34 A. 2d 441 (1943). See also *Bayshore Industries, Inc. v. Ziats*, 232 Md. 167, 192 A. 2d 487 (1963). (This case applied Art. 101, § 39 (c) Code (1957, 1964 Repl. Vol.) a statutory recognition of the doctrine of estoppel in workmen's compensation cases.) In the present appeal the only conclusion that can be drawn is that the delay in filing the suit was due to the lack of diligence on the part of the Leonharts.

The statute of limitations precludes recovery here and the appellee's motion for summary judgment was properly granted. *Sherman v. Am. Bankers Life Assur., supra; Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 272 A. 2d 42 (1971).

> *Judgment affirmed.*
> *Costs to be paid by appellants.*