John W. BAUSCH, Sr., et al.

v.

PHILATELIC LEASING, LTD., et al.

Civ. No. PN–88–242.

United States District Court,
D. Maryland.

Dec. 22, 1989.

As Revised Jan. 17, 1990.

Loren W. Hershey, James L. Quarles, III, Jude Curtis, Hale and Dorr, Washington, D.C., for plaintiffs.

Ronald Rubin, Washington, D.C., and Elliot Silverman, Gold & Wachtel, New York City, for defendants Philatelic Leasing, Ltd., Hambrose Stamps, Ltd., M & J Holding Corp., Melvin Hersch, and Herman Finesod and E. Joseph McConnell, Inc.

Elaine Metlin, Dickstein, Shapiro & Morin, Washington, D.C., for defendant Friedman & Shaftan, P.C.

John T. Coyne, Geoffrey T. Hervey, Jordan, Coyne, Savits & Lopata, Baltimore, Md., for defendant Trager, Glass & Co.

Philip J. Reilly, Foxboro, Mass., for defendants Donald Palazzo, Westminster Stamp Gallery, Ltd. and Dell Philatelic Consultants, Ltd.

Hugh Goldberg, New York City, for defendants Hugh Goldberg, Subway Stamp Shop, Inc. and Intern. Collectors Guild, Ltd.

## REVISED OPINION AND ORDER

NIEMEYER, District Judge.

This action arises from plaintiffs' complaint that a tax shelter based on the sale of printing plates for stamps was misrepresented. The Court is presented with a multiplicity of motions by various defendants to dismiss the complaint based on the alleged absence of jurisdiction, applicable statutes of limitations, the failure to state causes of action, and related grounds. The Court will grant some of the motions and deny others as described specifically hereafter.

### I. BACKGROUND

In an effort to realize tax benefits through the creation of a tax shelter, the 53 plaintiffs purchased leasehold interests in lithographic plates for the printing of stamps, known as "stamp masters." The expected benefits never materialized, how-

ever, as the Internal Revenue Service denied the tax credits and deductions that plaintiffs had been led to believe were proper. As a result, plaintiffs sued seventeen individuals and entities who were involved with the offering, promotion, and sale of the stamp masters. They allege a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and state causes of action of misrepresentation, negligent misrepresentation, breach of contract, and malpractice. Jurisdiction over the state claims is based on pendant party jurisdiction, or if the RICO claim is dismissed, on diversity jurisdiction.

The extensive details of the elaborate investment scheme that prompted this litigation have been fully explained in *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385 (6th Cir.1989), and *United States v. Philatelic Leasing, Ltd.*, 794 F.2d 781 (2d Cir.1986). The Court sees no need to recite all of the events, and only the facts necessary to understand the motions are chronicled here.

In 1979, Crailheath, Ltd., a British corporation and not a party to this case, entered into agreements with the owners of several small privately owned islands, located in the Hebrides off the coast of Scotland. Under the agreements, Crailheath was given the right to produce postage stamps bearing the names of the islands, in return for which Crailheath would set aside a certain number of the stamps for use by the islands. The islands, which are sparsely settled, were not serviced by the United Kingdom postal authorities. The agreements for the production of the stamps were entered into mainly for the philatelic market.

Crailheath transferred the rights to produce these stamps to defendant Global International, a Liberian corporation, and Global in turn sold to defendant Hambrose Stamps, Ltd., a New York corporation, the right to produce up to 9,711 different stamp masters bearing the names of the islands. Hambrose in turn entered into an agreement with defendant Philatelic Leasing, Ltd., also a New York corporation, giving it the right to purchase up to 9,500 stamp masters. In each of these transactions only a small amount of cash actually changed hands. The bulk of the consideration was in the form of nonrecourse notes, which were to be paid out of revenues derived from the sale or use of the stamp masters. It is alleged that the use of the nonrecourse notes permitted the defendants to inflate artificially the apparent value of the stamp masters.

Defendant Melvin Hersch served as president of Hambrose in 1980 and 1981, and then served as president of Philatelic starting in 1982. Defendant Herman Finesod was the owner of Hambrose, and he hired Hersch to be president. When Hersch left for Philatelic, Finesod took over as president of Hambrose. Defendant M & J Holding Corp. is the sole shareholder of Hambrose, and Finesod is the sole shareholder of M & J Holding.

Leasehold rights in stamp master production were marketed to potential investors, including plaintiffs, as a tax shelter. The investors were to receive an investment tax credit based on the inflated apparent value of the stamp masters and deductions for lease payments and other expenses. The investor acquired with the lease of the plate the right to produce approximately 58,000 stamps and sell these to the public. To assist with sales, Philatelic supplied to investors the names of distributors who were familiar with the stamp market. The leasehold rights were sold through a number of salesmen throughout the country, including Robert Ness, who worked in the Washington, D.C. area.

In 1982, Philatelic, with the assistance of defendant Trager Glass, a New York accounting firm, and defendant Friedman and Shaftan, a New York law firm, prepared a Confidential Offering Memorandum to be used in the sale of stamp masters to potential investors. Included with the Memorandum were letters from Friedman and Shaftan and Trager Glass representing that they would assist investors if the Internal Revenue Service challenged the tax benefits. Friedman and Shaftan also prepared

a tax opinion letter which stated that tax benefits awaited potential investors.

In late 1982, Robert Ness conducted seminars in Maryland and Virginia for potential investors, who were drawn to the seminars by a series of advertisements that had been placed in the *Washington Post.* At these seminars, he distributed copies of the Confidential Offering Memorandum, espoused the marvels of the investment, and introduced various people, such as appraisers, lawyers, and accountants, who would endorse the tax shelter features of the stamp masters investment.

As part of his sales promotion, Ness would telephone from his office to defendant Hugh Goldberg, associated with defendant Subway Stamp Shop, Inc., or to defendant Donald Palazzo, associated with defendant Dell Philatelic Consultants, Ltd., to have them confirm favorable opinions of the stamp master scheme. Ness likewise encouraged some of the plaintiffs to call Goldberg or Palazzo directly to receive market assessments. Ness had an arrangement to receive a commission of 26% to 30% of all lease payments he was able to generate for Philatelic.

As a result of Ness' sales efforts, 53 individuals, the plaintiffs in this case, purchased leasehold interests in the stamp masters from Philatelic.

When, on June 13, 1983, the United States filed suit for injunctive relief against Philatelic, Hersch, Hambrose, and Global for promoting abusive tax shelters, Ness assured plaintiffs that the litigation was of no consequence. Likewise, in 1984 and 1985, when plaintiffs received notice from the IRS that the tax credits and deductions would be disallowed and that penalties would be assessed, Ness again soothed plaintiffs' fears by asserting that Friedman and Shaftan and Trager Glass were contesting the IRS's decision. Contrary to

Ness' assurances, on February 13, 1985, judgment was entered against the defendants in the Philatelic litigation, *see United States v. Philatelic Leasing, Ltd.,* 601 F.Supp. 1554 (S.D.N.Y.1985), *aff'd,* 794 F.2d 781 (2d Cir.1986). Friedman and Shaftan and Trager Glass were similarly unsuccessful in contesting the disallowances by the IRS.

Plaintiffs filed this suit against defendants on January 28, 1988, alleging among other things that the defendants had misrepresented the value of the stamp masters, misrepresented the availability of investment tax credits and deductions, and misrepresented the ability to sell stamps produced by the masters in the philatelic market. In June 1988, defendants moved to dismiss the complaint on various grounds. On November 22, 1988, United States District Judge Motz granted defendants' motion to dismiss the securities fraud claim which had been alleged and granted plaintiffs leave to amend their complaint to correct other deficiencies in the complaint that he noted. Plaintiffs filed their amended complaint in December of 1988, and defendants once again filed motions to dismiss in January 1989. In June 1989 plaintiffs filed a second amended complaint to add a plaintiff, bringing the total to the present fifty-three.

Defendant Philatelic is in bankruptcy, having filed a petition on October 4, 1988, in the United States Bankruptcy Court for the Southern District of New York, and this action is stayed as to it. 11 U.S.C. § 362(a) (1988). Ness, who is apparently at an unknown location in Australia, is not a party to this suit.

To facilitate comprehension of the present posture of the case, a chart is provided to outline the claims of the complaint (Chart A) and to describe the nature of the pending motions (Chart B).

CHART A—COUNTS

| Count | Claim | Defendant(s) |
|---|---|---|
| I. | Misrepresentation | Global, Hambrose, Philatelic, Finesod, Hersch (the "Promoters") |

## CHART A—COUNTS

| Count | Claim | Defendant(s) |
|---|---|---|
| II. | Negligent Misrepresentation | All defendants. Specific allegations made against Friedman and Shaftan, Trager Glass, the "Appraisers" (Brubaker, McConnell, Pilgrim), and the "Distributors" (Dell, Subway, Westminster, Goldberg, Palazzo) |
| III. | RICO | Promoters, Appraisers, and Distributors |
| IV. | Malpractice | Friedman and Shaftan |
| V. | Breach of Contract | International Collectors Guild, and Dell Philatelic |
| VI. | Exemplary Damages (based on Count I) | Philatelic, Hambrose, Hersch, and Finesod |

## CHART B—MOTIONS

| Basis of Motion | Defendant(s) | Count(s) |
|---|---|---|
| Statute of Limitations | Hambrose, M & J Holding, Hersch, Finesod, and McConnell ("the Hambrose Group") | I, II, III, VI |
| | Friedman and Shaftan | II |
| | Trager Glass | II |
| | Goldberg, Subway | II, III |
| | International Collectors | II |
| Statute of Limitations raised as a defense but no motion filed | Dell | II, III, V |
| | Westminster | II, III |
| | Palazzo | II, III |
| RICO—failure to plead predicate acts, enterprise, and pattern | Hambrose Group | III |
| | Goldberg, Subway | III |
| Failure to join Ness under Rule 19(a) | Trager Glass | II |
| | Friedman and Shaftan | II, IV |
| | Goldberg, Subway | II |
| | International Collectors | II |
| Lack of pendant party jurisdiction | Trager Glass | II |
| | Friedman and Shaftan | II, IV |
| | Hambrose Group | I, II |
| | Goldberg, Subway | II |
| | International Collectors | II |
| Lack of diversity if Ness is joined under Rule 19(b) | Trager Glass | II |
| | Friedman and Shaftan | II, IV |
| | Goldberg, Subway | II |
| | International Collectors | II |
| Lack of diversity jurisdiction | Hambrose Group | I |
| | Trager Glass | II |
| | Goldberg, Subway | II |
| | International Collectors | II |
| Lack of personal jurisdiction | Trager Glass | II |
| Insufficient Process | McConnell | II, III |
| Rule 9(b) lack of particularity | Trager Glass | II |
| | Friedman and Shaftan | II |
| | Goldberg, Subway | II |
| | International Collectors | II |

The Court will address only those issues necessary to dispose of the motions.

## II. STATUTES OF LIMITATIONS

Various defendants contend that the claims that allege RICO, misrepresentation, and negligent misrepresentation are time-barred. The statute of limitations under RICO is four years, *see Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987), while the misrepresentation and negligent misrepresentation claims are governed by Maryland's three year time period. Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1989).

■ Under RICO, the statute of limitations begins to run when the plaintiff knows or should know of the injury that underlies the cause of action. *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir.1987). The original complaint in this case was filed on January 28, 1988. Therefore, the statute of limitations will not bar the RICO count unless plaintiffs knew or should have known of their injuries prior to January 28, 1984.

The complaint shows that the injuries actually occurred in 1982, when plaintiffs leased their stamp masters from Philatelic, and in 1983, when plaintiffs paid for their investments. Second Amended Complaint (hereinafter "Complaint"), ¶¶ 80, 114, 137. The relevant inquiry, therefore, is when should the plaintiffs have known that they were injured, i.e. that their investments were misrepresented.

The complaint reveals that on June 13, 1983, the United States filed suit against defendants Philatelic, Hersch, Hambrose, and Global, alleging that the stamp master scheme was an abusive tax shelter. *See* Complaint ¶ 118. This action is reported at *United States v. Philatelic Leasing Ltd.*, 601 F.Supp. 1554 (S.D.N.Y.1985). Significantly, in their opposition papers, plaintiffs do not contend that the existence of the lawsuit pending against Philatelic was hidden from them or that they did not know about it at or about the time it was filed.

They recognize the principle that knowledge of a lawsuit puts plaintiffs on notice of the potential consequences. *See Korwek v. Hunt*, 646 F.Supp. 953, 958 (S.D.N.Y.1986) (filing of lawsuit by private parties enough to put potential plaintiffs on notice), *aff'd*, 827 F.2d 874 (2d Cir.1987); *Rockstroh v. A.H. Robins Co.*, 602 F.Supp. 1259, 1268 (D.Md.1985) (plaintiffs failed to meet their burden of establishing fraudulent concealment because of litigation pending in another jurisdiction).

■ Plaintiffs' sole defense to notice given by the lawsuit is that Ness urged them not to worry about it. *See* Plaintiffs' Consolidated Opposition to Motions to Dismiss at 29 ("plaintiffs were *continuously* reassured the action was of no consequence") (emphasis supplied). They argue that this conduct on Ness' part tolls the statute of limitations under the equitable doctrine of fraudulent concealment. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Under this doctrine, the statute is tolled if (1) the party raising the statute fraudulently conceals the facts forming the basis for the claim and (2) the claimant fails to discover the acts within the statutory period despite (3) the exercise of due diligence by that party. *See Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d at 218.

The plaintiffs contend that these requirements were satisfied when defendants, acting through Ness, their alleged agent, fraudulently concealed the true nature of the litigation pending against Philatelic and continually reassured the plaintiffs that their investments in stamp masters were sound. Complaint ¶¶ 102(h), 120. They allege that the reassurances from Ness continued even after judgment was rendered in the *Philatelic Leasing* case, and that Friedman and Shaftan also provided its own optimistic view to the plaintiffs. Complaint ¶¶ 122, 144. They argue that they exercised due diligence because they made queries to Ness regarding the investment scheme which "were met by the defendants' reassurances and continued fraud. Certainly, under the circumstances the

plaintiffs exercised due diligence." Plaintiffs' Consolidated Opposition to Motions to Dismiss at 27 n. 20. As a result, the plaintiffs contend that they did not learn of the true nature of the scheme and the underlying fraudulent actions until April 1987, when Ness fled the country.

Plaintiffs cannot contend that they were not on notice. They can only argue, and do only argue, that Ness' assurances induced them not to act. The only issue, therefore, is whether in these circumstances they exercised due diligence to discover the fraud.

By their own admissions, plaintiffs relied only on the assurances of Ness, who is alleged to be the defendants' agent in the fraudulent scheme (Complaint ¶ 79), to justify their failure to act. Despite their knowledge of the lawsuit involving Philatelic, *see* Complaint ¶ 118, the plaintiffs voiced no misgivings to anyone but Ness. They allege in the complaint, "Because of Ness' reassurances, the plaintiffs did not investigate further or take other steps that would have enabled them to learn that the scheme was fraudulent." Complaint ¶ 120. The fact that the federal government had challenged the activities of the very parties with whom the plaintiffs were investing should have sparked doubt about the investment scheme and the credibility of Ness. The Court concludes that in this case plaintiffs were given legally sufficient notice as to their potential causes of action. Therefore, they were not justified in relying on the assurances of the potential defendants to justify their failure to investigate further.

The Fourth Circuit addressed an analogous claim of fraudulent concealment in *Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211 (4th Cir.1987). In *Pocahontas*, a contract mining company inquired of National Mines Corporation why National Mines refused to accept certain coal deliveries and why the price paid for delivered coal was so low. Instead of admitting that the price and delivery policies resulted from illegal antitrust activity, National Mines averred that the delivery quotas were the result of a strike and that

the price was the maximum allowable. *Id.* at 218. The court observed that

> [t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations in these cases. It can hardly be imagined that illegal activities would ever be so gratuitously revealed.

*Id.* at 218–19. Thus, the court found that the plaintiff had failed to exercise due diligence. *Id.* at 219.

The Ninth Circuit addressed a similar situation in *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406 (9th Cir.1987). In *Volk*, several plaintiffs had relied on the defendants' assertions that a 1978 report, which gave constructive notice to the plaintiffs regarding their claims, was nothing to worry about. *Id.* at 1416. The court held that the plaintiffs' reliance was unreasonable and hence, the plaintiffs failed to exercise due diligence.

■ The determination of whether a plaintiff exercised due diligence can be a subjective inquiry in certain circumstances. *See, e.g., Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir.1987). There may be times when the affirmative act of denying illegal conduct may constitute fraudulent concealment if the plaintiff's reliance on that denial was reasonable. *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir.1978). The facts of the instant case, however, lead this Court to the conclusion that plaintiffs acted unreasonably in relying on the assurances of Robert Ness when they had knowledge that the investment scheme that he was promoting was under attack by the federal government. When the person acting on behalf of those under suspicion denies any problem, that denial does not operate to conceal the notice provided to the plaintiffs by the government's charges. As the Fourth Circuit observed in *Pocahontas*, the plaintiffs' claim of fraudulent concealment must rest on something more than the defendants' failure to admit to their own illegal conduct. *Pocahontas*, 828 F.2d at 218.

Because approximately four and one-half years passed before plaintiffs filed their complaint in January 1988, the plaintiffs' RICO claims are time-barred.

■ The analysis of the statute of limitations defense to the state law claims of misrepresentation and negligent misrepresentation is similar to that made with respect to the federal claim. The applicable limitations period for these claims under Maryland law is three years. Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1989). Under Maryland law, the "discovery rule" applies and the cause of action accrues when the plaintiff has knowledge of circumstances which would put an ordinary person on inquiry of facts which an investigation would have in all probability discovered if it had been properly pursued. *Poffenberger v. Risser,* 290 Md. 631, 637, 431 A.2d 677 (1981). Since the complaint was filed on January 28, 1988, the claims are time-barred if the plaintiffs are imputed with the requisite knowledge prior to January 28, 1985.

In addition to notice given by the lawsuit filed by the United States against Philatelic, et al. in June 1983, the IRS had notified various plaintiffs in 1984 that their deductions and investment tax credits would be disallowed and that penalties would be assessed. Complaint ¶ 119. These additional circumstances are likewise sufficient to put the ordinary person on notice that an investigation into the possibility of fraud is necessary. *Leonhart v. Atkinson,* 265 Md. 219, 224–26, 289 A.2d 1 (1972).

The *Leonhart* court recognized that, as with federal law, a statute of limitations may be tolled by the doctrine of fraudulent concealment. *Leonhart,* 265 Md. at 226–27, 289 A.2d 1. Section 5–203 of the Md. Cts. & Jud.Proc.Code Ann. provides: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." This section does not apply unless the aggrieved party has been kept in ignorance of his cause of action by the fraud of the other party. *See, e.g., Piper v. Jenkins,* 207 Md. 308, 318, 113 A.2d 919 (1955). *See also Geisz v. Greater Baltimore Medical Center,* 71 Md.App. 538, 547, 526 A.2d 635 (1987), *rev'd on other grounds,* 313 Md. 301, 545 A.2d 658 (1988). Therefore, under Maryland law the issue is also whether the plaintiffs exercised ordinary diligence by failing to act because of Ness' assurances in 1983 and 1984.

The Court reaches the same conclusion for the state law claims as it does for the RICO claims. By the end of 1984, the plaintiffs knew that the IRS was disallowing the tax benefits of the stamp master investment scheme. They also knew that as far back as June 1983, the federal government had attacked the validity of the scheme. This is not a case in which the plaintiffs had only the defendants on whom they could rely for information regarding the scheme. Indeed, any prudence would have suggested that the potential defendants in any suit that plaintiff might file would deny liability. These circumstances permit no other conclusion than the plaintiffs did not exercise ordinary diligence.

Defendants Dell, Westminster and Palazzo did not actually join in the motions to dismiss counts I, II, and III based on the limitations defenses. They did, however, raise those issues as affirmative defenses. Since the motions have been filed and since they raised the defense, the Court will dismiss Counts I, II, and III as to them also.

### III.  JOINDER OF NESS

Defendant Friedman and Shaftan challenges the Court's diversity jurisdiction over the malpractice count and the negligent misrepresentation count (counts IV and II, respectively), contending that Ness must be joined as party and that his joinder would destroy diversity.

■ It is correct that if Ness is joined to this action pursuant to Fed.R.Civ.P. 19, then diversity as a basis for federal jurisdiction under 28 U.S.C. § 1332 would be destroyed. Although a U.S. citizen, Ness resides in Australia and thus is a citizen of no particular state. American citizens

without citizenship in a particular state cannot be parties in a diversity action. *See Sadat v. Mertes,* 615 F.2d 1176, 1180 (7th Cir.1980). The joinder of Ness, if necessary, would therefore destroy diversity as a basis of jurisdiction on the state law claims.

Rule 19, Fed.R.Civ.P., provides that if an absent party is needed for a just adjudication, but joinder is not feasible or would otherwise deprive the court of jurisdiction, the inquiry becomes, under Rule 19(b), whether "in equity and good conscience" the case should go forward or be dismissed, "the absent party being thus regarded as indispensable." The Rule enumerates four factors for consideration. First, whether the person's absence will prejudice him or the parties; second, whether a remedy can be fashioned in such a way to lessen any prejudice; third, whether a judgment in the person's absence will be adequate; and fourth, whether the plaintiff will have an adequate remedy if the federal case is dismissed. These factors are not to be applied exclusively, or mechanically or even with equal weight to each. Rather, the court has discretion to weigh pragmatically the factors it considers necessary for a just decision. *See, e.g., Cloverleaf Standardbred Owners Assoc. v. National Bank,* 699 F.2d 1274, 1277 (D.D.C.1983).

▪ The plaintiffs in this case argue that because Ness was the defendants' agent he must be joined to effect a complete remedy. Principals and agents are not, as a general rule, indispensable parties. *See, e.g., Willis v. Semmes, Bowen & Semmes,* 441 F.Supp. 1235, 1246 (E.D.Va.1977); 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1623 (2d ed. 1986). Ness' absence would not prejudice him because any judgment against defendants here would have no precedential effect against Ness. *See Willis v. Semmes, Bowen & Semmes,* 441 F.Supp. at 1246. This is especially true since the only remaining counts are for professional malpractice and breach of contract, to which Ness probably would not be a party. Moreover, if the remaining defendants prevail in the present case and plaintiffs perchance choose to sue Ness (if they can find him), that does not automatically prejudice the defendants. Finally, any judgment in favor of plaintiffs would be adequate to redress their injuries, Ness' absence notwithstanding. Therefore, weighing the factors in "equity and good conscience," the Court finds that Ness is not indispensable to this action.

## IV. SERVICE

As an additional ground for dismissal, the defendant E.J. McConnell, Inc. ("McConnell") has moved to dismiss plaintiffs' complaint because of the insufficiency of process. Plaintiffs concede that they have not served McConnell even though their time for doing so was extended by the Court in its Minute Order of September 15, 1988. Therefore, the Court agrees that this will provide an additional ground to grant McConnell's motion to dismiss.

## V. ORDER

By reason of the rulings made in this Opinion, the other issues presented need not be resolved. Accordingly, for the reasons given, it is ORDERED this *22nd* day of December, 1989, that:

1. The motions of defendants Hambrose, Hersch, Finesod, M & J Holding, Trager Glass, McConnell, Goldberg, Subway, Westminster, and Palazzo to dismiss the second amended complaint are granted and the complaint as to them is dismissed.

2. The motions of Friedman and Shaftan, International Collectors Guild, and Dell to dismiss Count II of the complaint are granted.

3. The motion of Dell to dismiss Count III is granted.

4. The motion of Friedman and Shaftan to dismiss Count IV is denied.

5. The complaint against Philatelic is dismissed administratively because of its bankruptcy, without prejudice to the case being reopened as to Philatelic, should that become appropriate after the bankruptcy proceeding is closed.

6. The plaintiffs are given ten days from this day to show cause why this complaint against Global, Brubaker and Pilgrim should not be dismissed for failure to effect service of process.

7. Count IV (malpractice against Friedman and Shaftan) and Count V (breach of contract against International Collectors Guild and Dell) continue. Those defendants who have not filed an answer are required to do so within twenty days.