**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: FIELD FARMS LIMITED
PARTNERSHIP; WILLIAM I. KING,
<u>Debtors.</u>

BROWN & STURM; R. EDWIN BROWN,
PA; THE PEACHTREE ROAD
INVESTMENT COMPANY; R. EDWIN
BROWN; REX L. STURM, PA; REX L.
STURM,

No. 96-2528

<u>Plaintiffs-Appellants,</u>

v.

FIELD FARMS LIMITED PARTNERSHIP;
WILLIAM I. KING,
<u>Defendants-Appellees,</u>

and

UNITED STATES TRUSTEE,
<u>Party in Interest.</u>

In Re: FIELD FARMS LIMITED
PARTNERSHIP; WILLIAM I. KING,
Debtors.

BROWN & STURM; R. EDWIN BROWN,
PA; THE PEACHTREE ROAD
INVESTMENT COMPANY; R. EDWIN
BROWN; REX L. STURM, PA; REX L.
STURM,

No. 96-2529

Plaintiffs-Appellees,

v.

FIELD FARMS LIMITED PARTNERSHIP;
WILLIAM I. KING,
Defendants-Appellants,

and

UNITED STATES TRUSTEE,
Party in Interest.

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-1115-AW, BK-94-15102, ADV-95-1A262,
ADV-95-1A263)

Argued: May 9, 1997

Decided: August 11, 1997

Before HALL, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** Charles Edwin Iliff, Jr., ILIFF & MEREDITH, P.C., Baltimore, Maryland; Philip James McNutt, BROWN & STURM, Rockville, Maryland, for Appellants. Jonathan E. Claiborne, Paul Mark Nussbaum, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Stephen Y. Brennan, ILIFF & MEREDITH, P.C., Baltimore, Maryland, for Appellants. Gary S. Posner, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland; Howard A. Rubenstein, ADELBERG, RUDOW, DORF, HENDLER & SAMETH, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

We have this case because severe tax consequences arose when two parents sold their valuable Montgomery County, Maryland, farm to partnerships formed by their children. After the sale and an IRS tax assessment, one of the children, William I. King, and his partnership, Field Farms Limited Partnership (Field Farms), took Chapter 11 bankruptcy. Thereafter, Brown & Sturm, the Peachtree Road Investment Company, Rex L. Sturm, and R. Edwin Brown (collectively, Brown & Sturm) filed a proof of claim for pre-petition services unrelated to the bankruptcy, including legal fees for representation in litigation with the IRS over taxes due from the sale of the farm. In adversary proceedings in bankruptcy court, King and Field Farms objected to Brown & Sturm's claim and asserted separate claims against Brown & Sturm for legal malpractice and other matters. The malpractice claim centered on the advice given by Brown & Sturm in structuring the sale of the farm. After a bench trial the bankruptcy court rejected all claims on both sides, and the district court affirmed.

In considering the appeal and cross appeal to us, we find no error and also affirm.

I.

Sometime in 1981 Lawson King and Cordelia King decided to transfer their 440-acre farm in Montgomery County, Maryland, to their adult children, William King, Elizabeth Jacobs, and Lois Aschenbach. Lawson King contacted Edwin Brown at the law firm of Brown & Sturm to work on the sale of the farm. Brown understood that the primary purpose of the sale was to minimize the tax consequences for both the parents and their children. At Lawson King's direction, Brown selected three appraisers and instructed them to perform an appraisal based on the property's agricultural value. The average of the three appraisals would be the price that the children would pay for the farm.

William King and Elizabeth Jacobs formed a partnership, Field Farms Limited Partnership (Field Farms), and Lois Aschenbach and her husband formed a partnership, Frederick Road Limited Partnership, to take title to the farm. Before the transfer August Bonsall, Lawson King's accountant, told King and his children that there might be adverse tax consequences from calculating the sale price based on the agricultural use value instead of the highest and best use value. Edwin Brown, the lawyer, testified that when he asked that the appraisals be performed, he understood the differences between agricultural value and highest and best use value. However, he admitted that he did not tell Lawson King or the children about the differences. On March 5, 1982, based upon the appraisals, the farm was sold for approximately $600,000 to the children's two partnerships.

Cordelia King died in 1983 and Lawson King died in 1985. Brown & Sturm was counsel to the estates, but Bonsall (the accountant) handled the estates' tax returns. In 1985 the IRS began investigating the transfer of the farm from the King parents to their children's two partnerships. The IRS ultimately assessed taxes and penalties of approximately $70 million against the estates of Lawson and Cordelia King and their children as beneficiaries. The large tax assessment was primarily due to the children's purchase of the farm at a price the IRS determined to be below fair market value. In the summer of 1987 the

4

King children gave their written consent for Brown & Sturm to represent them in all tax matters pending before the IRS involving their parents' estates. Brown & Sturm represented them on a contingent fee arrangement, based on a percentage of any reduction in the tax assessment.

Brown & Sturm retained the services of Charles Burton, an experienced tax litigator, to assist them in litigation with the IRS. The tax case concluded by settlement when the King family members agreed to pay $20 million to settle all claims against them. To pay this tax liability, the family borrowed $31 million with the farm pledged as collateral.

From 1988 to 1994 Brown & Sturm continued to represent William King and Field Farms on various projects unrelated to the IRS litigation. In September 1994 William King and Field Farms sought protection under Chapter 11 of the Bankruptcy Code. Brown & Sturm filed two proofs of claim: one for approximately $6 million for work performed in connection with the IRS litigation and the other for $1 million for additional work. On June 15, 1995, William King and Field Farms filed adversary proceedings, asserting claims against Brown & Sturm for $50 million in damages for malpractice (breach of contract and negligence), breach of fiduciary duty, fraud, recission, avoidance of preferential transfers, equitable subordination, and civil conspiracy. The case was tried before the United States Bankruptcy Court for the District of Maryland. The bankruptcy court concluded that William King and Field Farms' claims for malpractice, breach of fiduciary duty, and fraud were not brought within the time allowed by the applicable statute of limitations. However, the court determined that the malpractice claims could be pressed by King and Field Farms in the form of recoupment against Brown & Sturm's claims for attorneys' fees. The bankruptcy court then found that Brown & Sturm had been negligent in its work on the sale of the farm and allowed King and Field Farms to offset Brown & Sturm's claims. The bankruptcy court alternatively relied upon 11 U.S.C. § 502(b)(4) to disallow Brown & Sturm's claims because they were unreasonable. Finally, the court dismissed William King and Field Farms' claims to recover preferential transfers, for equitable subordination, and for civil conspiracy. The end result was that Brown & Sturm recovered nothing on its claims for attorneys' fees and King and his partnership, Field

5

Farms, recovered nothing from Brown & Sturm on their malpractice claims.

Both sides appealed the bankruptcy court's decision to the district court. The district court affirmed, and the parties now appeal to us.

II.

A.

We turn first to the bankruptcy court's disallowance of Brown & Sturm's claims under 11 U.S.C. § 502(b)(4). The bankruptcy court concluded that the claims filed by Brown & Sturm against the debtors' (King and Field Farms') estates were subject to review under that provision because Brown & Sturm was an attorney of the debtors. Under § 502(b)(4) a claim for attorneys' fees is allowed only to the extent those fees are reasonable in light of the services rendered. The bankruptcy court found that Brown & Sturm had been paid (pre-petition) sufficient moneys for the reasonable value of its services. Because the court found that the firm's claim for further moneys for attorneys' fees was unreasonable, it disallowed the claims in their entirety.

Brown & Sturm argues that review under § 502(b)(4) was inappropriate because it did not represent the debtors in the bankruptcy proceeding. We disagree and conclude that the bankruptcy court's application and interpretation of 11 U.S.C. § 502(b)(4) was correct. Section 502 provides in relevant part:

>(a) A claim of interest, proof of which if filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.

>(b) [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . .

6

> (4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services . . . .

Contrary to Brown & Sturm's contention, § 502(b)(4) is not limited to claims brought by attorneys of the debtor for services related to bankruptcy. Section 502(b)(4) "refers to claims for services rendered prior to the petition and unpaid at the time of the filing of such petition with respect to services rendered by an insider or an attorney to or for the debtor or the entity which subsequently becomes a debtor." 3 Collier on Bankruptcy, ¶ 502.02[5] (15th ed. 1996). The section is designed to permit "the court to examine the claim of a debtor's attorney or insider independently of any other provision of the statute and to disallow it to the extent it exceeds the reasonable value of the services." Id. Thus, § 502(b)(4) covers unpaid claims for services by an insider or an attorney regardless of whether the claims are based upon services rendered in contemplation of the filing of a petition under the statute. Specifically, "[f]rom the standpoint of the attorney, it makes no difference whether the services were rendered in contemplation of the filing of the petition or, indeed, whether those services had anything to do with bankruptcy or the debtor's financial affairs." Id.[1] The bankruptcy court was therefore correct to analyze Brown & Sturm's claims for legal fees under § 502(b)(4).

Brown & Sturm's primary claim related to its representation of William King and Field Farms in the IRS litigation. The evidence supports the bankruptcy court's finding that the claim was unreason-

---

[1] A comparison between 11 U.S.C. § 329 and 11 U.S.C. § 502(b)(4) demonstrates that Brown & Sturm's argument that § 502(b)(4) applies only to attorneys rendering services related to the bankruptcy is illogical. Section 329 applies to "[a]ny attorney representing a debtor in a case under [Chapter 11], or in connection with such a case . . . ." Thus, "when compensation is sought for past legal services not rendered in contemplation of or in connection with a case under the Code . . . the claim does not fall under the purview of section 329." 2 Collier on Bankruptcy, ¶ 329.03 (15th ed. 1996). However, "section 502(b)(4) deals with unpaid claims for services by an . . . attorney regardless of whether or not such claim is based upon the provision of services rendered in contemplation of the filing of a petition under the statute." 3 Collier on Bankruptcy, ¶ 502.02[5] (15th ed. 1996).

7

able and therefore should be disallowed. Brown & Sturm's services in the IRS litigation became necessary because of the questionable way in which the firm structured the sale of the farm. In addition, Brown & Sturm was apparently not sufficiently schooled in tax litigation because it retained the services of Charles Burton as tax expert "to guide them through the tax court . . . and make sure everything was prepared properly." Burton billed approximately $30,000 for his services in the IRS litigation, while Brown & Sturm attempted to recover nearly $6 million for their services in that litigation. Finally, between 1989 and 1993 William King and Field Farms paid Brown & Sturm nearly $2 million, designated as interest on the fees for the IRS litigation. As for the second claim for other services, Brown & Sturm had never even submitted a bill to King and Field Farms. It was not clearly erroneous for the bankruptcy court to find that this claim was unreasonable because it was neither properly documented nor otherwise sufficiently supported by the evidence.

B.

The bankruptcy court decided that William King and Field Farms' malpractice claims were not brought within the period prescribed by the statute of limitations.[2] Although the claims were technically barred by the statute of limitations, the court held that King and Field Farms could plead their claims for malpractice in the form of recoupment against any claims Brown & Sturm made against them.

We agree with the statute of limitations determination. Under Maryland law, "[i]n actions involving malpractice, . . . `the cause of action accrues when the wrong is discovered or when with due diligence it should have been discovered.'" Fairfax Savings v. Weinberg & Green, 685 A.2d 1189, 1201 (Md. App. 1996) (quoting Leonhart v. Atkinson, 289 A.2d 1, 4 (1972)). In a suit involving a client's claim that his tax accountant engaged in malpractice, the Court of Appeals of Maryland stated that "the date the notice of tax deficiency assessment was received . . . is the date limitations began to run adversely against appellants' cause of action." Leonhart, 289 A.2d at 5. Here,

_____

**2** The applicable statute of limitations for a civil action at law in Maryland is three years from the date of accrual of the cause of action. See Md. Code Ann., Cts. & Jud. Proc. § 5-101.

8

William King and Field Farms received the tax deficiency notice eight years before they filed their complaint against Brown & Sturm. King and Field Farms argue that the law firm's continued representation during this period prevented them from discovering their harm. Therefore, they contend that the statute of limitations did not run until the relationship ended. The Maryland courts have rejected this approach. See Watson v. Dorsey, 290 A.2d 530, 533 (Md. 1972) (noting that even though attorney-client relationship may continue after the wrong has occurred, the limitations nevertheless begin to run when the party knew or should have known of the legal harm); Leonhart, 289 A.2d at 3 (finding that statute of limitations began running when tax deficiency was assessed despite fact that tax accountant remained as the plaintiffs' accountant, continued to prepare their tax returns, and repeatedly gave assurances that the IRS position was incorrect). Prior to closing on the sale of the farm, William King had been warned about the adverse tax consequences by Lawson King's prior lawyer, G. Van Velsor Wolf, and by Bonsall, the accountant. The deficiency assessment was for $70 million. The sheer magnitude of the tax assessment as well as the prior warnings would have notified a reasonable person that there was something wrong. Thus, the bankruptcy court determined correctly that the statute of limitations bars the malpractice claims.[3]

We need not address whether the equitable remedy of recoupment was available to William King and Field Farms. Because the bankruptcy court properly disallowed Brown & Sturm's claims pursuant to § 502(b)(4), there are no claims against which to apply recoupment.[4]

_____

[3] The district court also concluded that the statute of limitations barred William King and Field Farms' claims for fraud and breach of fiduciary duty. On appeal these parties appear to focus on the statute of limitations as it relates to malpractice. In any event, we believe that the statute of limitations bars the fraud and breach of fiduciary duty claims for the same reasons that bar the malpractice claims.

[4] We have reviewed William King and Field Farms' other arguments, including those concerning recission and the recovery of certain transfers to Brown & Sturm made prior to the petition date. They are without merit.

III.

We affirm the order of the district court that in turn affirmed the judgment order of the bankruptcy court.

<u>AFFIRMED</u>

10