703 A.2d 240

Betty Brown EDWARDS, et al.

v.

Pandelis DEMEDIS, et al.

No. 564, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Dec. 22, 1997.

542

Andre R. Weitzman (Steven J. Potter, on the brief), Baltimore, for appellants.

John S. Vander Woude (Eccleston & Wolf, P.C., on the brief), Baltimore, for appellee, Blanton.

Deborah Murrell Whelihan (Jordan Coyne & Savits, on the brief), Washington, DC, for appellee, Chubb Securities Corp.

Jonathan E. Claiborne and Whitford, Taylor & Preston, on the brief, Towson, for appellee, Demedis.

Argued before WENNER, EYLER and THIEME, JJ.

EYLER, Judge.

The principle issue before us is whether the discovery rule, which determines when a cause of action accrues, requires that a formal notice of deficiency be issued by the Internal Revenue Service in order for a claim based on alleged negligent tax advice to accrue. We hold that it does not.

## Facts

The four appellants, Francis Thelen, George Sourlis, George Antonas, and Nicholas DiGiacomo, are retired Baltimore County school teachers. Each was a member of the Maryland State Retirement System (Retirement System), and consequently, a percentage of their gross earnings was paid to the Retirement System during their working years. The contribution was not tax deductible. In 1990, the State closed the Retirement System to new employees and replaced it with the Pension System. The Pension System was non-contributory but provided a lower benefit at retirement and required longer service before eligibility for retirement. Members of the Retirement System were given an option to transfer to the Pension System. To encourage transfer, the State offered to refund all or part of each employee's contribution to the Retirement System, depending on the facts of each case, plus interest.

In 1990, Pandelis Demedis, appellee, a financial planner and registered representative of Chubb Securities Corporation, also an appellee, presented an investment plan to teachers, including each appellant. The plan envisioned that each teacher would accept a transfer refund from the Retirement System and roll over the interest portion of the refund into an individual retirement account that would be managed by Demedis. Demedis and each appellant obtained a legal opinion from Edward L. Blanton, Jr., another appellee, an attorney, that the interest portion of the refund was eligible for a tax-free rollover. The legal opinions were issued between February and November, 1990. Each appellant transferred from the Retirement System to the Pension System and invested funds in individual retirement accounts managed by Demedis.

Sometime prior to January 1990,[1] the State requested a revenue ruling from the Internal Revenue Service on the

---

1. In January 1990, Antonas and DiGiacomo each received a memorandum from the Teachers Association of Baltimore County discussing the differences between the Retirement Plan and the Pension System. The memorandum stated that the State of Maryland had requested a ruling

eligibility of the interest portion of the refund for tax-free treatment. The Internal Revenue Service issued a ruling on July 23, 1990, holding that the refund did not qualify for tax-free treatment. Thelen, Sourlis, and Antonas received notice of the Internal Revenue Service ruling in the summer of 1990.

Unlike the other appellants who had transferred their funds in early 1990, DiGiacomo did not transfer funds from the Retirement System to the Pension System until after the revenue ruling. In conjunction with that transfer, DiGiacomo was advised in November 1990 that the Internal Revenue Service had ruled that the refund could not be rolled into an individual retirement account and qualify for tax-free treatment.

In the fall of 1990, Thelen, Sourlis, and Antonas received one or more letters from state and federal legislators concerning the tax issue. The three appellants understood that the legislators had been contacted because of the revenue ruling and with regard to a possible effort to seek legislative change. One or more of the legislators advised appellants that they had received inaccurate advice regarding the tax consequences resulting from the transfer of funds.

On April 2, 1991, the executive director of the Maryland State Retirement Agency issued a memorandum directed to persons who had received a transfer refund in 1990. In that memorandum, the executive director stated that taxes could be imposed on transfer refunds and advised recipients to close individual retirement accounts and withdraw the transferred amounts prior to April 15, 1991. Similar advice was repeated in a memorandum dated April 8, 1991. Stronger advice was contained in a memorandum dated April 12, 1991, in which the executive director stated that recipients who had rolled refunds into individual retirement accounts "must" withdraw such funds prior to April 15, 1991, in order to minimize the tax consequences.

---

from the Internal Revenue Service as to the taxability of the refund but that, as of that date, the ruling had not yet been issued.

Sourlis, Antonas, and DiGiacomo acknowledged receipt of the April 2 memo and Sourlis and Antonas acknowledged receipt of all three memos. On April 10, 1991, the Retirement System issued an "Announcement" to former members who had accepted transfer refunds *after* the revenue ruling in July, 1990, stating that such persons would receive no tax relief. The Retirement System noted that it had disseminated the ruling promptly and there was no "confusion" after that time.

After the revenue ruling in July 1990, and again after the Retirement System's communications in April 1991, Blanton and Demedis advised appellants that, in their opinion: (1) the ruling did not apply to them, (2) it would be overturned in court, and (3) they would be better off financially with their monies in the individual retirement accounts. Consequently, there was nothing that they needed to do.

On October 1, 1992, the Internal Revenue Service District Director issued a report of income tax changes for the calendar year 1990 directed to Thelen, showing a deficiency and balance due based on receipt of the transfer refund and rollover into an individual retirement account. This report was received by Thelen no later than October 14, 1992. On June 18, 1992, the Internal Revenue Service District Director sent a similar report to Sourlis, received no later than July 24. On August 18, 1992, a revised report showing a deficiency and balance due was sent to Sourlis and received no later than October 8. On July 16, 1992, the Internal Revenue Service District Director sent a similar report to Antonas showing a deficiency and balance due. A revised report was sent to Antonas on August 25. Both reports were received by him no later than September, 1992. On December 17, 1993, a similar report was sent to and received by DiGiacomo.

After receipt of the proposed changes, each appellant retained Blanton to represent him in contacts with the Internal Revenue Service and in any subsequent litigation. Blanton advised appellants that they could either (1) wait for a formal

notice of deficiency assessment[2] to be issued and litigate the issue in Tax Court, or (2) pay the tax and request a refund. In the event that the refund was denied, appellants could then sue in the United States District Court for the District of Maryland. Blanton advised appellants to take the latter route because it would enable them to recover attorney's fees and interest if successful in the underlying claim. Each appellant paid the deficiency claimed and filed a refund claim. Specifically, Thelen paid the tax on March 22, 1993, and filed a refund claim on March 28, 1993; Sourlis paid the tax on December 18, 1992, and filed a refund claim on January 9, 1993; Antonas paid the tax on January 22, 1993, and filed a refund claim in February, 1993; and DiGiacomo paid the tax on August 18, 1994, and filed a refund claim on the same date.

Blanton did not advise appellants that, prior to the filing of the refund claims, and in connection with his representation of Demedis, he had been attempting to obtain a private ruling from the Internal Revenue Service. Blanton also failed to advise appellants that the request for a ruling had been rejected by the Internal Revenue Service. In rejecting the request, the Internal Revenue Service had informed Blanton that the Internal Revenue Code section relied on by him in making his request was not applicable.[3] Blanton failed to relate this information to appellants. The Internal Revenue Service, between May 1993 and May 1995, denied appellants' claims for refunds. After the refund claims were denied, appellants, represented by Blanton, filed suit in the United States District Court.

In February 1995, the Internal Revenue Service made a settlement proposal to various teachers, including appellants. Blanton and Demedis advised appellants not to accept the

---

**2.** See Internal Revenue Code 26 U.S.C. § 6212.

**3.** Blanton, in his communications with the Internal Revenue Service, had argued that the Retirement System had "terminated" within the meaning of Inter. Rev. Regulation 1.411(d)(2). The Internal Revenue Service, while refusing to issue a ruling, stated that the regulation did not apply to government plans.

offer. The offer was not accepted by appellants, and they subsequently lost their refund suits.[4]

## Procedural History

The complaint herein was filed in the Circuit Court for Baltimore County on October 17, 1995, and contained counts entitled "Malpractice," "Breach of Warranty," and "Conflict of Interest."[5] An amended complaint was filed on February 27, 1996, which added counts entitled "Negligent Misrepresentation," "Fraud," "Negligent Supervision," and "Violation of the Maryland Securities Act." Additionally, Chubb Securities Corporation, alleged employer of Demedis, was added as a defendant.

In December 1996, Blanton filed a motion for partial summary judgment with respect to the claim of negligent advice that the refunds would be tax free. The motion asserted that the claim was barred by limitations. In January 1997, Demedis and Chubb filed motions for summary judgment on the same ground. On March 14, 1997, the trial court filed an opinion and order, in which it held that "the statute of limitations bars any action brought by the plaintiffs."

In March 1997, Blanton filed a motion to alter or amend judgment, requesting clarification of the court's opinion and order. Blanton pointed out that, while the amended complaint contained claims for negligent tax advice which were the subject of his motion for partial summary judgment, it also contained claims for negligent advice in connection with the settlement offer by the Internal Revenue Service. The latter occurred in February, 1995, within three years prior to the filing of the complaint, and was not the subject of the motion.

---

**4.** After initiation of the litigation before us, various teachers, including appellants, reached a settlement agreement with the Internal Revenue Service.

**5.** Originally, eight plaintiffs filed suit against Demedis, Blanton, and Standish McCleary, III, another attorney. McCleary was dismissed without prejudice on February 21, 1996. Edwards, who appears in the title of this case, was one of the original eight plaintiffs. Only the four named herein are prosecuting this appeal.

Also in March, appellants filed a motion to alter or amend judgment and a motion requesting reconsideration of the entry of summary judgment. Appellants agreed with Blanton that the negligent settlement advice claim was not barred by limitations. Additionally, with respect to the latter claim, appellants argued that Demedis and Chubb should not be granted summary judgment because they participated with Blanton in giving the negligent settlement advice.

On May 8, 1997, the trial court entered an order granting Blanton's motion and denying appellants' motions. This action by the court had the effect of leaving open the negligent settlement advice claim as to Blanton. In the interim, on May 2, 1997, appellants filed a motion for partial voluntary dismissal, without prejudice. The trial court subsequently denied appellants' motion for voluntary dismissal and confirmed the previously scheduled trial date of June 2, 1997. At trial, the court reconfirmed its earlier denial of appellants' motion for voluntary dismissal without prejudice. Appellants presented no evidence at trial, and the trial court entered judgment in favor of Blanton. This appeal followed.

## Questions Presented

In essence, appellants pose two questions for our review, which we state as follows:

1. Did the trial court err in entering summary judgment on the ground that appellants' claims were barred by limitations?

2. Did the trial court abuse its discretion in denying appellants' motion for partial voluntary dismissal of the negligent settlement advice claim?

## Discussion

### I.

Appellants contend that their claims for negligent tax advice are not barred because a cause of action for such claims does not accrue until a notice of deficiency assessment is received from the Internal Revenue Service pursuant to 26 U.S.C.

§ 6212. Appellants argue that, because such a notice of deficiency was not issued in the case before us, the cause of action did not accrue until the claims for refund were denied by the Internal Revenue Service. Appellants explain that, conceptually, the denial of a claim for refund has the same effect as the issuance of a notice of deficiency, *i.e.*, the Internal Revenue Service has the right to collect the taxes claimed at either point in time, subject to judicial review. Finally, appellants point out that a notice of deficiency was never issued because of advice by Blanton and Demedis to pay the taxes claimed and to seek a refund, as opposed to contesting the proposed assessment prior to payment. Alternatively, appellants argue that if a notice of deficiency or denial of a claim for refund is not required in order for a cause of action to accrue, the earliest it could accrue was when appellants paid the taxes.

Appellants argue that if this Court declines to apply a bright line rule that a cause of action accrues when a notice of deficiency is issued or a claim for refund is denied, or alternatively when the taxes are paid, at the very least the question of when a cause of action accrues is a fact question to be decided by a jury. As alternatives to the above arguments, appellants contend that the statute of limitations was tolled because: (1) appellees continued to represent and provide negligent advice to appellants, and (2) appellees' conduct constituted constructive fraud.

Appellees contend that the discovery rule applies on a case-by-case basis and that a notice of deficiency is not necessarily required in order for a cause of action based on negligent tax advice to accrue. They point out that in the case before us, appellants had actual knowledge of the position taken by the Internal Revenue Service more than three years prior to the filing of the malpractice suit. Alternatively, appellees argue that the new claims against the original defendants and the claims against the new defendant, Chubb, contained in the amended complaint, do not relate back to the date of the original filing.

Based on the facts of this case, we hold that (1) a cause of action for malpractice accrued more than three years prior to the filing of this malpractice action,[6] (2) the continuous representation by appellees did not toll the period of limitations, and (3) there was no legally sufficient evidence of constructive fraud. As a result, we need not discuss appellees' relation back argument.

### A.

In addressing appellants' first contention, it is important to keep in mind the basic options available to a taxpayer when an Internal Revenue Service examiner audits a tax return and proposes an adjustment. If the taxpayer disagrees with the proposed adjustment, it may appeal to the Internal Revenue Service Appeals Division. If the taxpayer loses on appeal, the Internal Revenue Service issues a notice of deficiency pursuant to 26 U.S.C. § 6212. The assessment is then final insofar as the Internal Revenue Service is concerned, but it is subject to judicial review in the United States Tax Court. Alternatively, a taxpayer may pay the tax claimed without pursuing an appeal within the Internal Revenue Service and seek a refund. If the refund is denied, the taxpayer can sue in the United States District Court for a refund, interest, and attorney's fees.

Appellants rely primarily on *Feldman v. Granger*, 255 Md. 288, 257 A.2d 421 (1969), and *Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d 1 (1972), as standing for the proposition that a cause of action for malpractice based on negligent tax advice does not accrue until a notice of deficiency is issued. Appellants further assert that this result is the same as that reached by courts in various other jurisdictions, and they cite cases to that effect. •

We will begin our discussion with a review of Maryland law, apply that law to the facts of this case, and then turn

---

6. We need not decide whether malpractice in fact occurred; for purposes of this appeal, we accept appellants' allegations.

our attention to the law of other jurisdictions. Under Maryland law, assuming that the elements of a cause of action are present, the discovery rule applies in determining when a cause of action accrues for limitations purposes. The discovery rule, first applied in medical malpractice cases and later extended to all professional malpractice cases, now applies in all tort actions. *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981). Under the discovery rule, a cause of action accrues when a claimant knows or should have known of the wrong. The discovery rule, as applied in Maryland, is clearly distinguishable from the maturation of harm rule applied in some jurisdictions. A legal wrong must be sustained, but a precise amount of damages need not be known. *American Home Assurance Co. v. Osbourn,* 47 Md.App. 73, 86–87, 422 A.2d 8 (1980). A cause of action accrues when knowledge of facts and circumstances are sufficient to put a claimant on notice to make inquiry. *Lutheran Hospital of Maryland v. Levy,* 60 Md.App. 227, 237, 482 A.2d 23 (1984). Once on inquiry notice, a claimant has a duty to seek out facts supporting a cause of action. *Pennwalt Corp. v. Nasios,* 314 Md. 433, 550 A.2d 1155 (1988). When there is no genuine issue as to a material fact relative to the accrual of a cause of action, the date of accrual may be determined as a matter of law. *See Bennett v. Baskin & Sears,* 77 Md.App. 56, 67–68, 549 A.2d 393 (1988) (citing *O'Hara v. Kovens,* 305 Md. 280, 503 A.2d 1313 (1986)).

■ Appellants rely on *Feldman* and *Leonhart* as standing for the proposition that, in a case of malpractice based on negligent tax advice, there is a bright line rule as to when a cause of action accrues, *i.e.,* upon receipt of a notice of deficiency from the Internal Revenue Service. Courts in some jurisdictions, while acknowledging that states have applied different rules of law with respect to the issue in question, have cited *Feldman* and *Leonhart* for the proposition that the period of limitations does not begin to run until the issuance of the statutory notice of deficiency. *See, e.g., Mills v. Garlow,* 768 P.2d 554, 556 (Wy.1989). We read *Feldman* and *Leonhart* differently.

*Feldman* involved a malpractice action against an accountant for damages arising out of an assessment of taxes by the Internal Revenue Service. Summary judgment was entered in favor of the accountant, and the issue on appeal was the date of accrual of the cause of action for malpractice. The claimants argued that the cause of action did not accrue until the United States Tax Court sustained the deficiency assessed by the Appeals Division of the Internal Revenue Service. The accountant, relying on the discovery rule, argued that the cause of action accrued earlier when (1) the claimants discovered the act of negligence in that case, specifically, the late filing of a form with the Internal Revenue Service, or (2) when the claimants were advised of the deficiency by the Appeals Division. The Court of Appeals applied the discovery rule, distinguished the maturation of harm rule, affirmed the summary judgment, and stated:

Again, focusing attention on the date of July 22, 1964, when the appellant received the notice of the tax deficiency in the amount of $25,428.06 from the Appellate Division of the Internal Revenue Service, we are of the opinion that any reasonable and prudent man, being in the place of the appellants, would have known or certainly should have known at that time, that he had sustained legal harm as of that date, if not before. The appellants had by this time discharged the appellees as their accountants and they had known for over three and a half years that the Internal Revenue Service disagreed with their position. Certainly, when they received notice of the tax deficiency assessment on July 22, 1964, if they had not before, it became necessary for them to incur the expense of retaining legal counsel. We think, at the very least, from the date of this assessment of the tax deficiency by the Internal Revenue Service the statute of limitations began to run adversely to their action against their accountants.

It is true that in an income tax case, such as is involved in the present litigation, the exact amount of deficiency may be subject to negotiation at various conference levels so that the damage might be altered prior to the notice or assess-

ment of deficiency, but as in the *Mattingly* [*v. Hopkins*, 254 Md. 88, 253 A.2d 904 (1969)] case, and as in other tort cases, the exact amount of damages sustained may not be known at the time of the discovery of the wrong. However, in our opinion this is not a sufficiently sound reason to postpone the accrual of the action or toll the running of limitations when other reasons grounded in public policy are considered.

255 Md. at 296, 257 A.2d 421.

*Leonhart* involved a malpractice action against an accountant for a tax deficiency caused by a change in accounting method. Summary judgment was entered for the accountant. The accountant argued that the cause of action accrued when the claimant first received notice of an adjustment or, alternatively, no later than receipt of the notice of deficiency. The claimant argued that the cause of action did not accrue until the Tax Court affirmed the assessment. The Court of Appeals, based on *Feldman*, determined that limitations began to run when the notice of the deficiency assessment was received by the claimant and, consequently, affirmed the summary judgment.

First, we note that neither of these cases involved payment by a taxpayer of a disputed claim for taxes followed by a claim for refund. Second, our reading of these cases is that they are merely fact specific applications of the general discovery rule. The Court did not purport to adopt a bright line rule applicable to malpractice actions for damages arising out of negligent acts resulting in the assessment of additional taxes. Based on the facts in *Feldman* and *Leonhart* and the way the issues were presented, it was not necessary for the Court of Appeals, in either case, to look at a point in time earlier than the date of receipt of the notice of deficiency in order to find sufficient notice and affirm the summary judgments.

We acknowledge that there is language in *Leonhart* which facially is consistent with appellants' reading of the case. The Court of Appeals stated: "Accordingly, as directed by *Feldman*, the date the notice of the tax deficiency assessment was

received by the Leonharts, April 27, 1965, is the date limitations began to run adversely against appellants' cause of action." *Leonhart,* 265 Md. at 226, 289 A.2d 1. We are confident, however, that the Court of Appeals was only reciting the facts in support of its application of the discovery rule and did not intend to adopt a bright line rule for determining the date of accrual of all malpractice actions against tax advisors.

In the case before us, appellants claimed, based on various legal theories, that Blanton and Demedis advised them in 1990 to accept a transfer distribution from the Retirement System and invest the interest portion of the distribution in an individual retirement account. Appellants also claimed that, in addition to bad tax advice, the nature of the investments made by Demedis, after the funds were deposited into the individual retirement accounts, were inappropriate. Appellants claimed as damages taxes, interest, penalties, litigation costs, attorney's fees, mental, and emotional harm, and losses stemming from the inappropriate investments.

■■ For purposes of the discovery rule, the notice required is that which is sufficient to put a claimant on inquiry. *Lutheran Hospital,* 60 Md.App. at 237, 482 A.2d 23. Appellants knew, by November 1990, the position taken by the Internal Revenue Service and further knew that, if the tax advice was wrong, any tax deficiency would be caused by the negligent advice they received. If not on inquiry notice then, they arguably were on notice by the spring of 1991, after receiving correspondence from the Retirement System. We hold that appellants other than DiGiacomo were on inquiry notice no later than the period between June 1992 and October 8, 1992, when they received notices from the Internal Revenue Service. With respect to DiGiacomo, he was specifically advised by the Retirement Service in November 1990 and in April 1991, that, because he had transferred funds after the date of the revenue ruling, he would receive no favorable tax treatment. We hold that DiGiacomo was on inquiry notice no later than April 1991.

■ With respect to the claim of improper investments by Demedis and Chubb, appellants knew the nature and extent of the investments in 1990. For the reasons just recited, they knew they had sustained an actionable wrong, if appellees' advice was incorrect, no later than the dates recited in the preceding paragraph. With respect to either the claim for negligent tax advice or improper investments, the only facts unknown by the above dates were whether a court would find that the Internal Revenue Service was wrong or, if not, the amount of any harm sustained. It is clear that a final adjudication is not required for a cause of action to accrue, *see Feldman* and *Leonhart,* and uncertainty as to amount does not prevent accrual. *American Home Assurance,* 47 Md.App. at 86–87, 422 A.2d 8.

If we were to hold that a cause of action had not accrued by April 1991 as to DiGiacomo and by October 8, 1992, with respect to the other appellants, the only other logical point for it to have accrued was when the refund claims were finally adjudicated and the amount of harm became certain. Under the facts of this case, this would mean that a cause of action did not accrue until after the final judgment by the United States District Court and the resolution of any subsequent appeal. This point in time for accrual is clearly not consistent with Maryland law. *See Watson v. Dorsey,* 265 Md. 509, 512–13, 290 A.2d 530 (1972).

We now turn our attention to the cases from other jurisdictions relied upon by appellants. Those cases are either distinguishable or inconsistent with Maryland law. Preliminarily, we note that all of the cases involved a protest and administrative appeal prior to judicial review in the Tax Court, as opposed to the facts of the case before us wherein the tax was paid and a claim for refund filed.

In *Thomas v. Cleary,* 768 P.2d 1090 (Alaska 1989), the Court reversed a lower court judgment entered against an accountant in a malpractice case, holding that there was no completed tort because there had been no actual damage. As part of its discussion, however, the Court reviewed statute of

limitations cases and, specifically, those cases dealing with the date of accrual of a cause of action. The alleged error in *Thomas* concerned the sale of a business in 1976, which affected a 1977 corporate tax return. Subsequent to the error, the accountant advised the claimant that he owed additional taxes, and the malpractice action was based on the alleged miscalculation by the accountant. The court pointed out that the 1977 tax return had never been filed and that there had never been a claim by the Internal Revenue Service. Consequently, the question as to whether any damage existed was speculative and there was no tort. The holding is not instructive for our purposes because the evidence in the case before us would support a finding of probable harm and, thus, there was a tort.

*Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985), involved a malpractice action against an accountant for negligent preparation of a tax return. This case is factually distinguishable and, in addition, the Court interpreted a statute of limitations very dissimilar to Maryland's statute and discovery rule. The court in *Streib* stated that the mere negligent preparation of the return was not enough, that the Internal Revenue Service must also dispute the return, and that it did so in that case by assessing penalties and interest. The question of whether notice of a potential claim prior to assessment would have been sufficient for accrual of a cause of action was not decided by the court.

To the same effect is *Cameron v. Montgomery,* 225 N.W.2d 154 (Iowa 1975). In that case, the court had before it a legal malpractice action based on alleged error in the filing of a federal estate tax return. The return had been filed late, and the attorney allegedly assured the claimant that there would be no problem. Subsequently, the Internal Revenue Service assessed additional tax, interest, and a penalty. In that case, unlike the case before us, there was no point in time when the claimant had a basis for believing that the attorney was wrong until the deficiency assessment occurred.

*Chisholm v. Scott,* 86 N.M. 707, 526 P.2d 1300 (App.1974), involved a malpractice action against accountants for errors in the preparation of tax returns. In *Chisholm,* the issue was whether the cause of action accrued as of the time of the wrong, *i.e.,* the preparation of the tax return, or the time of the deficiency assessment. The court held that limitations began to run on receipt of notice of a deficiency assessment from the Internal Revenue Service.

In the above cases, the courts did not have before them any factual basis for notice prior to the assessment that would have been relevant to the ultimate outcome. In other words, the above cases simply represent fact specific applications of the discovery rule.[7]

Other cases are simply inconsistent with Maryland law. In *International Engine Parts, Inc. v. Feddersen & Co.,* 9 Cal.4th 606, 38 Cal.Rptr.2d 150, 888 P.2d 1279 (1995), the court had before it a malpractice action against an accountant based on the negligent filing of tax returns. The court held that the statute of limitations commenced when the deficiency was assessed by the Internal Revenue Service. The court observed that discovery of the loss and actual injury was required but held that there was no actual injury based on the preliminary findings of the auditor because they were subject to review and negotiation and were not final until assessment. Until the audit was finalized, the malpractice action was inchoate or potential because there had been no actual determination that the alleged negligence was related to the deficiency assessment. When the audit was finalized, the harm caused was no longer contingent.

---

7. *See also Godfrey v. Bick & Monte,* 77 Or.App. 429, 713 P.2d 655 (1986). This case involved a malpractice action against attorneys and accountants based on alleged error in structuring a corporate transaction. A notice of deficiency was issued on November 10, 1981. The claimant settled with the Internal Revenue Service on December 30, 1982, and suit was filed on January 4, 1984. The claimant argued that the cause of action accrued on the settlement date. The Court, applying a two-year statute of limitations, held that the cause of action accrued when the notice of deficiency was received because at that time claimant knew of the wrong and the damage although not the amount.

In the case before us, we first note that causation was not an issue and the existence of some damage was known within the time periods previously discussed. The rationale of contingency of harm does not apply in the case before us because some harm occurred when the transfer distribution was received and deposited into individual retirement accounts. If the advice to do so was negligent, the harm was not speculative and incapable of constituting the damage element of a tort. *See Davidson v. Miller*, 276 Md. 54, 61–62, 344 A.2d 422 (1975) (prospective damages may be considered competent evidence if they are reasonably probable).

Second, part of the court's rationale in *International Engine Parts* was to adopt a bright line rule, while expressly recognizing that in some cases injury will be clear before a notice of deficiency is issued. Unlike the court in *International Engine Parts*, we do not believe a bright line rule presently exists in Maryland, and we decline to adopt one for application in malpractice actions based on negligent tax advice.

In *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994), the court held that, in a malpractice action against an accountant based on negligent preparation of tax returns, limitations began to run when the work product was received by the client. The court did not apply the discovery rule, however, but applied the New York rule that a cause of action accrues in a malpractice action when the injury occurs, even if the claimant is ignorant of the wrong or the injury. Based on New York law, the court rejected the notice of deficiency assessment as the point in time when the cause of action accrued and held that the action accrued at the time of the original negligent act. *See also Gray v. Barry*, 101 Ohio App.3d 764, 656 N.E.2d 729 (1995) (malpractice action against an accountant for failure to file tax returns. No discovery rule under the applicable law.) *Wynn v. Estate of Holmes*, 815 P.2d 1231 (Okl.App.1991) (malpractice action against accountant wherein notice of deficiency triggered commencement of limitations. Distinguishable because under applicable law extent of loss had to be known, and additionally, result was based on estoppel).

## B.

Appellants next contend that the period of limitations was tolled because of the continuing representation by Blanton. Appellants point out that Blanton continued to advise them in dealings with the Internal Revenue Service and in the subsequent litigation in federal court. Specifically, appellants were advised that the revenue ruling did not apply to them, that they should withdraw funds from the individual retirement accounts, pay the taxes, claim a refund, and subsequently, that they should reject the Internal Revenue Service settlement offer. This advice was negligent and also prevented the issuance of a notice of deficiency.

■ It is clear that continuous representation alone is not sufficient to avoid the bar of limitations. *See Leonhart,* 265 Md. at 228, 289 A.2d 1. In *Watson v. Dorsey,* 265 Md. 509, 290 A.2d 530 (1972), the Court of Appeals had before it a malpractice suit against an attorney based on alleged incompetence at trial in failing to call certain witnesses. The issue on appeal was the date of accrual of the cause of action for malpractice. Appellant argued that the cause of action accrued when the case was affirmed on appeal. Appellant also argued that the relationship of trust and confidence and the continuing relationship with the defendant lawyer should prevent accrual of a cause of action at an earlier date. The Court of Appeals applied the discovery rule and held that the claimant had knowledge of the wrong when the case was tried and lost.

Appellants' reliance on cases such as *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966), *Vincent v. Palmer,* 179 Md. 365, 19 A.2d 183 (1941), and *W.B. & A. Electric RR Company v. Moss,* 130 Md. 198, 100 A. 86 (1917), is misplaced. *Waldman* is an early application of the discovery rule in a medical malpractice case, and *Vincent* and *W.B. & A. Electric RR Company* are merely illustrative of the general proposition that a cause of action does not accrue before it comes into existence.

In a dispute involving compensation for personal services, there is no cause of action, and it does not accrue until the events have occurred that give rise to the duty to pay compensation. For example, in *Vincent*, the Court had before it a claim by an employee to a percentage of profits of the employer's business as compensation for services. The Court observed that limitations did not begin to run until there was an accounting or the services had ended. Under the agreement, the employer had not specified when he would pay the percentage, only that the agreement was in force as long as the individual was employed. There was no breach prior to termination of services since there had been no agreement to pay prior to that time.

In the case before us, appellees consistently opined to appellants, beginning in 1990, that the Internal Revenue Service's position would withstand challenge. Once sufficient knowledge of a cause of action existed, continuous representation was irrelevant. The wrong continued over time which is different from a wrong which comes into existence or becomes known only after the passage of time.

## C.

Appellants next contend that the limitations period was tolled by constructive fraud on the part of appellees. Appellants point to a fiduciary relationship between themselves and appellees and assert: (1) that there was a conflict of interest in the fact that Blanton advised both the teachers and Demedis, and failed to disclose this conflict to appellants; (2) that Blanton represented Demedis in an effort to obtain a revenue ruling in 1991, and at that time learned that at least one of his legal arguments, had been rejected by the IRS, but failed to disclose this information to appellants; and (3) that appellees failed to disclose Demedis' conflict of interest and the improper investments made by him.

Maryland Code Cts. & Jud. Proc. Art., § 5–203 (1995 Repl. Vol., 1997 Supp.), states:

If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.

In *Fairfax Savings v. Weinberg & Green*, 112 Md.App. 587, 685 A.2d 1189 (1996), this Court reviewed Maryland cases applying the discovery rule and concluded: "The dispositive issue in determining when limitations begin to run is when the plaintiff was put on notice that he may have been injured." *Id.* at 613, 685 A.2d 1189. In an effort to avoid the application of that rule, the claimant argued the existence of fraud or constructive fraud.[8]

In *Fairfax Savings*, we quoted with approval from *Finch v. Hughes Aircraft Company*, 57 Md.App. 190, 241–42, 469 A.2d 867 (1984), as follows:

[T]he burden is on Plaintiffs to prove that they did not discover the alleged wrong more than three years before they filed suit and that this lack of discovery was not due to Plaintiffs' unreasonable failure to exercise ordinary diligence. A plaintiff who invokes Section 5–203 of the Courts and Judicial Proceedings Article must "show affirmatively that he was kept in ignorance of his right of action by the fraud" of defendant, *Metee [Mattee] v. Boone*, 251 Md. 332, 339, 247 A.2d 390 (1968), and "must specifically allege and prove when and how his knowledge of the fraud was obtained, so that the court will be enabled to determine whether he exercised reasonable diligence to ascertain the facts." *Piper v. Jenkins*, 207 Md. 308, 319, 113 A.2d 919 (1955). In cases where the "discovery rule" may be applicable, plaintiff also has the burden of proving the applicability

---

8. Constructive fraud has been defined as "[a] breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." *Ellerin v. Fairfax Savings*, 337 Md. 216, 236 n. 11, 652 A.2d 1117 (1995).

of the rule since, ordinarily, defendant will have no personal knowledge of when plaintiff discovered, or should reasonably have discovered, the facts upon which his cause of action is based, and plaintiff will know what facts were known to him at any given period in time and what action he took to protect his rights. *See DeWitt v. United States,* 593 F.2d 276 (9th [7th] Cir.1979); *Burgon v. Kaiser Foundation Hospitals,* 93 Cal.App.3d 813, 155 Cal.Rptr. 763 (1979); *Franklin v. Albert,* 381 Mass. 611, 411 N.E.2d 458 (1980).

112 Md.App. at 623, 685 A.2d 1189 (footnotes omitted).

As stated previously, appellants had knowledge of the position taken by the Internal Revenue Service, and had knowledge of the advice by appellees to contest the IRS ruling. As a result, appellants had sustained actual harm no later than the summer of 1992 and prior to October 17 of that year. There was simply no legally sufficient evidence that fraud, on the part of appellees, kept appellants from instituting a malpractice action for negligent advice at any point in time. Appellants were on notice of sufficient facts to make inquiry and the failure of appellees to disclose additional facts does not change that result. The nondisclosures did not prevent knowledge of a cause of action and did not cause the failure of appellants to initiate an action at an earlier date.

### D.

Before dealing with appellants' second question, we will briefly discuss the entry of summary judgment in favor of Demedis and Chubb with respect to their allegedly negligent advice to reject the Internal Revenue Service's settlement offer, which was made in 1995. There was insufficient legal evidence to sustain that claim. In appellants' reply brief, they argue that there is legally sufficient evidence to implicate Demedis and Chubb with respect to Antonas and DiGiacomo and point to their answers to interrogatories. Our review of those answers convinces us that the trial court's ruling was correct. Antonas, in his answers, stated only that he spoke to Demedis about the proposed settlement in February, 1995.

DiGiacomo, in his answers, stated that Demedis recommended rejection of the offer but he—DiGiacomo—attempted to accept it, although the effort was too late. There is nothing to tie that result to Demedis or Chubb.

## II.

 Appellants' final contention is that the trial court abused its discretion in denying their motion to dismiss voluntarily the negligent settlement advice claim. Appellants acknowledge that the ruling was within the discretion of the trial court, see Rule 2–506(b), but argue that, on the facts of this case, the ruling was an abuse of discretion. The only reason put forward by appellants is that Blanton wanted the claim reinstated for purposes of delay, and that appellants wanted to dismiss the claim in order to obtain a final judgment with respect to the summary judgment rulings to enable them to seek a reversal on appeal.

First, we observe that the position taken by appellants is an unusual one. If their claim had been voluntarily dismissed, they would have obtained a final judgment, at most, one month earlier. The real issue, therefore, is the fact that the disposition of the claim was with prejudice. Appellants had an opportunity to put on evidence in support of that claim when the case was called for trial but failed to do so.

In any event, we cannot say that the trial court abused its discretion in refusing to permit the dismissal without prejudice when the claim had been pending since October 1995, a trial date had been in existence for some time, and appellants filed their motion a month before the trial date. *See Scheve v. Shudder, Inc.*, 328 Md. 363, 377–78, 614 A.2d 582 (1992); *Owens–Corning Fiberglas Corp. v. Fibreboard Corp.*, 95 Md. App. 345, 349–50, 620 A.2d 979 (1993).

Under appellants' approach, they would have dismissed the claim without prejudice, appealed the final judgment, possibly reinstated the negligent settlement advice claim, all with the consequent possibility of a second appeal. This course of

action would not have resulted in the most efficient use of judicial resources.

## Conclusion

In sum, a cause of action accrues when (1) it comes into existence, *i.e.*, when there is a negligent act, causation, and damage sufficient to constitute a tort, and (2) the claimant acquires knowledge sufficient to make inquiry, and a reasonable inquiry would have disclosed the existence of the allegedly negligent act and harm. Continuing events, once the above has occurred, do not prevent accrual of the cause of action or toll the period of limitations. Subsequent events may give rise to a new cause of action, however. Finally, fraud may prevent the acquisition of knowledge sufficient to constitute inquiry notice or prevent the acquisition of additional information if inquiry is made.

In the case before us, the negligent tax advice occurred in 1990. Although the advice was subsequently repeated, appellants sustained actionable harm and knowledge of the harm no later than the summer of 1992. The existence of harm was not speculative because the Internal Revenue Service was aware of the situation and made a claim. A continuing representation or continuation of the wrong, once the wrong is known, does not change the above result. The claim for negligent settlement advice in 1995 failed for lack of evidence.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**