Paul JACOBSON

v.

James SWEENEY.

No. CIV. Y–96–3371.

United States District Court,
D. Maryland.

Feb. 7, 2000.

Paul Jacobson, pro se.

Harry J. Carleton, Fairfax, VA, for Defendant.

### MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

#### I.

This case is before the Court on a Motion for Summary Judgment filed by the Defendant, James Sweeney. The Plaintiff, Paul Jacobson, filed his complaint in the United States District Court for the Eastern District of Kentucky on August 5, 1996, alleging fraud and negligence in connection with the sale of a property in Bethesda, Maryland. The complaint identified two defendants, James Sweeney, a resident of Washington, D.C., and a co-defendant, a resident of Lexington, Kentucky. The Eastern District of Kentucky issued an Order on October 23, 1996, transferring the case to this court pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties. *See Jabobsen v. Sweeney*, No. 96–339 (Oct. 23, 1996, E.D.Ky.).

Jacobson filed his first amended complaint on November 26, 1996, alleging fraudulent concealment, fraudulent misrepresentation, and breach of warranty. Discovery revealed that Sweeney was involved in Chapter 11 bankruptcy proceedings and the case was automatically stayed. On March 24, 1999, however, the United States Bankruptcy Court for the District of Columbia ordered that "the automatic stay be partially lifted to the extent of applicable [insurance] coverage" to allow the case to proceed to trial. This Court subsequently set a trial date of January 31, 2000.

Jacobson filed a third amended complaint on June 28, 1999, alleging negligence and fraud. In particular, Jacobson claims that in 1988, Sweeney recommended property at 6304 Bradley Boulevard in Bethesda and either intentionally misrepresented or failed to inform Jacobson about the value of the property, the traffic noise in the area, and the potential presence of hazardous materials on the site. According to Jacobson, as a result of Sweeney's acts, he purchased the property for more than $280,000 and made $60,000 in improvements to the house, but sold the property for only $204,000 in 1992. He now seeks compensatory damages of $140,000 plus punitive damages.

On January 7, 2000, the Court held a conference on the record. At that time, the Court denied Sweeney's Motion for Summary Judgment and excluded the expert testimony proffered by Jacobson. In the following weeks, the parties raised various issues and the Court, upon reconsideration of the record, postponed the January 31 trial date and scheduled a motions hearing where the parties would be free to renew previous motions. At the hearing, Sweeney renewed his Motion for Summary Judgment, asserting that Jacobson's claims are barred by Maryland's three-year statute of limitations. Jacobson opposed the Motion on the grounds that the Court should apply Kentucky's statute of limitations to his claims. In addition, he

argued that because the property was actually purchased by a limited partnership named Sarsi Saxon, L.P., he was unable to calculate his damages until 1995, when the partnership was dissolved.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir. 1995). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Board of Trustees*, 55 F.3d 943, 951 (4th Cir.1995). The mere existence of a scintilla of evidence in support of Plaintiff's case is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Plaintiff's evidence, however, is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. 2505.

## II. Discussion

### A. *Claims Addressed by this Decision*

The Order of the Bankruptcy Court lifted the automatic stay only to the extent of applicable insurance coverage. Jacobson argues that the insurance does not cover fraud and, therefore, the Order does not allow the Court to address the fraud claims. *See Distaff, Inc. v. Springfield Contracting Corp.*, 984 F.2d 108 (4th Cir. 1993). The Court withholds judgment on the coverage question at this time. However, in the interests of justice and judicial economy, and in concert with the purposes of the Bankruptcy Code, the Court will address Jacobson's fraud claim along with his negligence claim.

■ The purpose of the Bankruptcy Code's automatic stay provision is to insulate debtors from financial pressures and to freeze the status quo with regard to proceedings against the debtor. *See, e.g., ICC v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir.1991). The Court finds it consonant with the goals of the Bankruptcy Code and judicial economy to address Jacobson's fraud claim on summary judgment. The only issue decided by the Court at this stage is the statute of limitations. As discussed in section II.C hereafter, any events relevant to this case occurred between 1988 and 1992 and, therefore, any claims Jacobson could make regarding these events are time-barred. Addressing the fraud claim at this time, therefore, advances the interest of judicial economy and provides for the prompt resolution of the claims against Sweeney. *See In re Neal*, 176 B.R. 30, 33 (Bankr.D.Idaho 1994). Further, the Court finds that Jacobson will not be prejudiced by this decision. His claim is barred by the statute of limitations, regardless of whether a court addresses his claim now or later. Finally, the purpose of the Bankruptcy Court's Order was to ensure that Sweeney was insulated from liability while allowing the parties to continue the litigation. This opinion is consistent with that purpose. Sweeney is subject to no liability due to the absolute bar raised by the statute of limitations, and the pending issues are resolved in a timely manner.

## B. *Choice of Law*

In opposition to Sweeney's Motion for Summary Judgment based on the Maryland statute of limitations, Jacobson cites *Translinear, Inc. v. Republic of Haiti*, 538 F.Supp. 141 (D.D.C.1982), for the proposition that federal courts transferring cases for *forum non conveniens* purposes under 28 U.S.C. § 1404(a) must apply the statute of limitations that would have applied had the action proceeded in the transferor court. In light of *Translinear*, Jacobson argues, the Court must apply Kentucky's statute of limitations to his claims.

Although the Court agrees with the holding in *Translinear*, it disagrees with the conclusion Jacobson draws from it. In *Translinear*, the applicable statute of limitations was the Texas limitations period for contract claims. When the case was transferred pursuant to 28 U.S.C. § 1404, the transferee court was bound to follow that statute of limitations. In the present case, this Court is indeed bound to follow the statute of limitations that would have applied in the Eastern District of Kentucky, but contrary to Jacobson's assertions, the applicable statute of limitations was Maryland's three-year bar, not Kentucky's longer period.

Federal courts sitting in diversity apply the choice-of-law rules of the forum state, *see Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 796 n. 5 (4th Cir.1993), and when a case is transferred pursuant to 28 U.S.C. § 1404(a) on *forum non conveniens* grounds, the choice-of-law rules of the transferor's forum will apply, *see Ferens v. John Deere Co.*, 494 U.S. 516, 519, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Myelle v. American Cyanamid Co.*, 57 F.3d 411, 413, 416 n. 5 (4th Cir.1995). This case was transferred pursuant to § 1404(a), and the Court should apply the same choice-of-law rules as do the Kentucky courts.

In making choice-of-law decisions, Kentucky courts once applied the *lex loci delicti* rule in torts cases, always applying the substantive law of the state where the tort occurred. *See Rutherford v. Good-year Tire & Rubber Co.*, 943 F.Supp. 789, 791 (W.D.Ky.1996). More recently, Kentucky has abandoned the pure *lex loci* rule in favor of an "interest analysis" that considers which state has the most significant contacts with the litigation. *See id.* at 792. In *Rutherford*, the court addressed this issue in the context of a product liability action in which the plaintiff was a resident of Indiana who collided with the car of another Indiana resident in Indiana, and alleged injuries stemming from a faulty tire manufactured in Kentucky. *See id.* The court held that Indiana law should apply because "Kentucky has no particular interest or reason to apply its law to any of the parties in this case .... Kentucky's true interest in this case is a minimal one." *Id.*

In light of *Rutherford*, it is clear that Maryland law applies in this case. Jacobson is a resident of Maryland who alleges negligence and fraud in connection with the sale of a Maryland property. The purported acts of negligence and deceit underlying his claims also occurred in Maryland. In contrast to *Rutherford*, nothing in this case is even remotely connected to Kentucky. Therefore, because Kentucky has virtually no interest or contact with Jacobson's claims, Maryland law would have applied in Kentucky courts and, consequently, applies in this Court after a change of venue pursuant to 28 U.S.C. § 1404(a).

## C. *Maryland's Statute of Limitations*

The Maryland Code provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code" applies. Md.Code Ann. Cts. & Judicial Proceedings § 5–101 (1998). A cause of action "accrues" when the plaintiff had actual knowledge of the wrong or an "awareness implied from a knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry" of the wrong. *See Poffenberger v. Risser*, 290 Md. 631, 635–37, 431 A.2d 677 (1981). This standard, also known as the "discovery rule," is satisfied when: (1) the plaintiff had knowl-

edge of circumstances that would have led a reasonable person in the same circumstances to undertake an investigation; and (2) the investigation, if pursued with reasonable diligence, would have led to knowledge of the alleged wrong. *See Hartnett v. Schering Corp.*, 2 F.3d 90, 92 (4th Cir. 1993) (citing *Pennwalt Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155 (1988)). The issue of whether a cause of action is barred by the statute of limitations is usually a mixed question of law and fact that may be taken from the jury when the court determines, as a matter of law, that the plaintiff did not file the suit within the prescribed time. *See Shetterly v. Raymark Industries, Inc.*, 117 F.3d 776, 783 (4th Cir.1997); *Edwards v. Demedis*, 118 Md.App. 541, 553, 703 A.2d 240 (1997).

The Court finds as a matter of law that Jacobson's claims are barred by the statute of limitations. The material facts in this case are not in dispute and, therefore, summary judgment is appropriate. Specifically, the parties agree that any statements or representations underlying Jacobson's claims occurred in 1988 or 1989, after which time Jacobson and Sweeney had no interaction. The parties also agree that the Bethesda property was sold in 1992 at a price significantly lower than the purchase price. Finally, it is apparent that Jacobson has no personal knowledge to support, and has offered no other evidence to show, that the property at 6034 Bradley Boulevard is contaminated.

It follows from this factual scenario that Jacobson's claims accrued some time between 1988 and 1992. Jacobson claims that Sweeney acted with negligence or fraud with regard to three aspects of the property at issue: (1) the traffic noise; (2) value of the property; and (3) the presence of hazardous materials.

█ Any claims relating to the traffic noise accrued in 1989. Jacobson admitted in his deposition that he noticed the traffic noise as early as 1988 or 1989 when he stayed overnight at the property and noticed that the morning rush hour sounded like "thunder." Jacobson Dep. at 97. Because this awareness constitutes knowledge of the claim, the Court finds that any cause of action concerning the traffic noise accrued at that time, and the statute of limitations now bars the claim.

█ Similarly, the statute of limitations bars Jacobson's claim concerning the value of the property. Any of Sweeney's representations regarding the property's value occurred between 1988 and 1989, during the time that Jacobson purchased the property. Moreover, due to the traffic noise, Jacobson suspected Sweeney of misrepresenting the virtues of the property as early as 1989. When asked at his deposition whether or not he asked Sweeney to re-sell the property for him in the Spring of 1989, Jacobson replied that he did not trust Sweeney because "he had lied to me." Jacobson Dep. at 99. Clearly, any reasonable person who believed that the seller's agent had lied about the condition of the property would have had reason to investigate. In any event, the latest date when Jacobson would have learned of the "true value" of the property was in 1992, when he sold it for $204,000. Because Jacobson did not file suit until 1996, the three-year statute of limitations bars his claims relating to property value.

█ Jacobson's third category of claims relates to hazardous materials on the property, which allegedly lowered the property's value. In contrast to the other claims, there is no evidence that Jacobson had actual knowledge of this injury between 1988 and 1992. This variation results, in part, from the complete absence of evidence to show that the property is, indeed, contaminated.[1] Assuming *arguendo* the validity of Jacobson's claims[2], the

---

[1]. Although the Court resolves this issue on limitations grounds, it also notes that absent proof of contamination, Jacobson cannot sustain a cause of action for fraud. *See, e.g.,* *Gross v. Sussex Inc.*, 332 Md. 247, 257–60, 630 A.2d 1156 (1993).

[2]. For a plaintiff to prevail on a negligence claim, it is axiomatic that he must first show

Court finds that he was on inquiry notice, at the latest, by the time he sold the house in 1992. By that date, Jacobson was aware that fears about contamination were allegedly lowering his property's value. Jacobson Dep. at 102–105. The Court finds that this awareness, in conjunction with the following factors—(a) Sweeney's alleged falsehoods regarding traffic noise and property value; (b) Sweeney's alleged statement that the property was not contaminated; (c) statements in the sales contract about the need to have the property tested for contamination; (d) no evidence that Sweeney had checked the property for contamination; and (e) the fact that the property was once a PEPCO substation— are more than sufficient as a matter of law to have put a reasonable homeowner on notice of Sweeney's alleged negligence and fraud at the time of the sale in 1992.

 Jacobson attempts to avoid the bar to his claims by invoking the "maturation of harm" rule. In particular, he claims that he could not have been aware of his claims and, therefore, the statute of limitations should not have started to run, until he was aware of the full damages he suffered. This awareness, he claims, did not occur until 1995, when Sarsi Saxon was wound up. Unfortunately for Jacobson, Maryland courts have not adopted the maturation of harm rule. *See Hecht v. Resolution Trust Corp.*, 333 Md. 324, 336 n. 9, 635 A.2d 394 (1994); *Edwards v. Demedis*, 118 Md.App. 541, 553, 703 A.2d 240 (1997). A legal wrong must have been sustained to trigger the statute of limitations, but a precise amount of damages need not be known at that time. *See Edwards*, 118 Md.App. at 553, 703 A.2d 240. It is clear from the record, in any event, that Jacobson knew the extent of his injury when the home was auctioned in 1992, whether or not Sarsi Saxon was the seller in name.

## III. Conclusion

Based on the foregoing analysis, the Court finds that Jacobson's claims are barred by the Maryland statute of limitations, and will grant Sweeney's Motion for Summary Judgment and enter judgment in his favor.

## *ORDER*

In accordance with the attached Memorandum, it is this 7th day of February 2000, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant's Motion for Summary Judgment BE, and the same IS, hereby GRANTED;

2. That JUDGMENT BE ENTERED in favor of the Defendant; and

3. That copies of this Memorandum and Order be mailed to Plaintiff and counsel for the Defendant.

---

that the defendant owed him a duty of care. Here, Jacobson claims that Sweeney—who was the real estate agent for the sellers of the property—owed him a duty of care to inspect the property for defects before selling it. In Maryland, there is no general duty for a real estate agent to investigate and report on defects that exist in a property, unless the agent undertakes to investigate property for a specific purpose. *See Lewis v. Long & Foster Real Estate, Inc.*, 85 Md.App. 754, 584 A.2d 1325 (1991). Real estate agents owe property buyers a duty, in some circumstances, to disclose defects of which they know or should have known, *see Gross v. Sussex Inc.*, 332 Md. 247, 630 A.2d 1156 (1993), but recent cases have limited this duty to the disclosure of material facts known to the seller's agent, *see Lopata v. Miller*, 122 Md.App. 76, 712 A.2d 24 (1998) (agents required by professional standards to disclose material facts). Here, the record shows that Sweeney divulged the pertinent material fact, i.e., that the property was formerly a PEPCO substation. There is no evidence to indicate that Sweeney knew of other material facts regarding contamination on the property.